## PLAYLAND PARK STADIUM CORP. et al. v. J. H. SPECTOR & SONS.

### No. 4854.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 26, 1952.

Cole, Patterson, Cole & McDaniel and Aaron Hessel, Houston, for appellants.

Homer E. Stephenson, Orange, for appellees.

R. L. MURRAY, Justice.

This is an appeal from a judgment of the district court of Orange County, overruling the pleas of privilege of Playland Park Stadium Corporation, Playland Park, Incorporated, Louis Slusky and Samuel N. Fox, residents of Harris County.

The appellees, J. H. Spector & Sons, a partnership, brought suit in Orange County against the appellants and another defendant, Abe Slusky, seeking rescision and damages arising out of the purchase by appellees of eleven 10-year, 5 percent debentures, of the principal sum of $1,000 each, issued by the appellant Playland Park Stadium Corporation under date of June 1, 1947. The petition alleged fraud on the part of appellant Fox, acting for himself and all the other parties sued, upon J. H. Spector, agent and manager of the appellees, which fraud was alleged to consist of certain acts of representation and concealment by said Fox in order to induce the sale and purchase of said $11,000 in debentures by Spector.

On the hearing upon the pleas of privilege of the appellants, the following facts were developed:

The appellants Slusky and Fox are residents of Harris County and the principal offices and places of business of the incorporated appellants are in Harris County, Texas. Appellants Fox and Slusky and his brothers, Abe and Sam Slusky, who are not appellants, individually owned a tract of land on South Main Street in Houston, Harris County. The same individuals were the stockholders, officers and directors of

both the appellant corporations. One Varrick from Omaha owned some stock in one of the corporations, just which one is not clear from the statement of facts, but the percentage of ownership by him was small. Mr. Fox was president of both corporations. The individuals leased their land on South Main Street to Playland Park, Incorporated, and Playland Park, Incorporated, subleased a portion of said land to Playland Park Stadium Corporation. Playland Park Stadium Corporation, in building a stadium on which automobile races were to be held and were held, issued some $84,000 in debentures. Without going into the details of the leases and subleases we observe that their effect was that the individuals owned the land, the corporation Playland Park, Incorporated, owned whatever improvements that were put on the land, and Playland Park Stadium Corporation had a lease on the improved premises which could be terminated upon default in payment of rentals or upon bankruptcy of that corporation. Upon the happening of these or other contingencies, possession of the improved premises would revert to the individual owners of the land. The only security for the payment of the debentures, therefore, was the revenue to be derived from a successful operation of the enterprises on the land held under lease by Playland Park Stadium Corporation. J. H. Spector, in 1947, was operating the business which is now operated by appellees, as an individual enterprise. In May, 1947, appellant Fox came to Orange in Orange County and made a deal with Mr. Spector by which Mr. Spector agreed to sell lumber and materials to Fox and his associates for the purpose of building a stadium on their ground in Houston, Harris County. Fox told him that he had a playland park over there and had started a stadium and needed lumber and material to finish it; that they had invested a lot of money in there and needed some more; that he wanted to pay Spector for the lumber and materials one-half in cash and one-half in debenture bonds, 10 year 5 percent debenture bonds. Mr. Spector thereupon took Mr. Fox with him to the office of his attorney, Mr. Bennett, where the proposition was stated to Mr. Bennett in general terms. Mr. Spector

on the trial testified, and this is heavily relied upon by the appellants here, that Mr. Fox told him "He said the property belonged to Fox and the Slusky boys. It was all owned by Fox and the Slusky boys. That is the statement they give me." On cross-examination he repeated these statements and said: "That was his statement in my office; all the property and everything there belonged to them; that they were the sole owners." Since Mr. Spector did not enter into his agreement to take the debenture bonds for one-half of the price of the lumber and materials sold until he had submitted the proposition to Mr. Bennett, the testimony of Mr. Bennett, the attorney, is of importance as to the exact nature of the representations made by Mr. Fox at that time and we set out his testimony in detail, as follows:

"Q. Judge Bennett, you have heard some testimony here in reference to a discussion had in your office, between Mr. Spector, Mr. Slusky and yourself. Do you recall that discussion? A. Yes, sir.

"Q. State whether or not any mention was made of the ownership of the land, in your presence. A. Yes. After describing the land and the properties that they had, on which they intended, or were building at that time, a stadium, Mr. Fox, in answer to my question, as to the stock of this corporation, said that the Slusky boys and himself owned the land, and organized the Playland Park or Playland Park Stadium—I don't know what he said, but they organized the corporation, and they owned this corporation, it all belonged to the corporation, and that it was a very fine thing, and that is the reason they couldn't sell the stock; they owned the corporation; owned the land, organized the corporation, and that the corporation owned all that property, and that was the debenture bonds that they were issuing to him, which would be paid ahead of any stockholder, or anything else. Now, as to whether it was Stadium—Playland Park Stadium Corporation—whether he said Playland Park Stadium Cor-

poration or Playland Park, Inc.,—It was Playland Park, I know, but I don't know whether he said Playland Park Stadium Park or Playland Park, Inc. At that time, I didn't know there was another corporation. They said they had organized this corporation, and they owned all the property, and they were issuing bonds, and they were refusing to sell the stock, because it would pay out, and they would own it all, and that was what Mr. Spector agreed to take. I said if it was true, it looked like it was all right, if they had that property, and I then went over the matter, and he went over and made an inspection and came back and decided then to accept the deal, after talking to Mr. Fox and Mr. Slusky and somebody else. I don't know, but that was the statement at that time in my office, by Mr. Fox.

"Q. Was there ever any statement made by Mr. Fox that there were two corporations, in your presence? A. None whatever, and no mention of the corporation having any lease. He showed no lease, and said nothing about two corporations, one leasing from the other, or anything like that. Now, those bonds were a first mortgage on all the property, and he was safe in taking them, because they would have to be paid before any stockholder got anything out of it.

"Q. Do I understand you to say that Mr. Fox stated that the bonds were secured by a first mortgage on the property? A. They were a first mortgage. He didn't say secured, but he said the property of the corporation was liable for these bonds, before any stockholder could draw anything, or anything else. He told him that it was better than stock."

Later, on further cross-examination, Mr. Bennett testified as follows:

"Q. Mr. Bennett, the testimony this morning was that Mr. Spector brought Mr. Fox to your office on one occasion? A. That's right.

"Q. Did Mr. Slusky ever come to your office? A. No. I never did see

Mr. Slusky until I saw him at your office.

"Q. That's just been recently? A. Well, not too long ago.

"Q. This year, anyway? A. I believe it was.

"Q. Now, Mr. Fox was in your office on only one occasion? A. That's right.

"Q. I would like for you to tell us again just what conversation was had there in your office that day? A. Well, Mr. Spector stated to me when he brought him up, that he was undertaking to sell him these debentures for material that they wanted to build the stadium with, on South Park—South Main in Houston, and that he wanted to know whether he should buy them or not, and he said Mr. Fox could tell me the details, and Mr. Fox then undertook to tell me what they had out there; that they had this twenty acres of land, and that he and Mr. Slusky—he named all of them—had bought the land, and they had created this corporation, as I stated this morning. I don't know whether he said the stadium corporation or Playland Park Corporation, or whether it was Playland Park, Incorporated, but there was only one corporation he mentioned, and we specifically asked him what the security was on these bonds they were issuing, and he very readily told us they were purely an obligation of the corporation, and that they would be paid ahead of any stockholders, and I asked the question myself as to why he didn't take some of the stock in there, and he said it was paying too big dividends, too good a thing; they wouldn't sell any of the stock at all; all they would do was issue these debenture bonds, and when the bonds were paid off, then they would own it all. He stated that they and their associates owned all the stock, that is, he and his associates owned all the stock, and they were not going to part with any of it, and that all the profits of this thing would go to take care of the bonds. Then I told Mr. Spector if they had what he said they

had, and that was an obligation on what they had, I thought that was all right. I didn't know about that. That's when Mr. Fox invited Mr. Spector to go down and look at it. That's the substance of what took place in my office.

"Q. State whether or not he said in your presence—Sam Fox there—that the corporation owned the land. A. He said 'We own the land. We incorporated. It's all in there. It's all in there, and nothing can be paid,' through the entire conversation, that the corporation owned all, everything that was out there, for him to go look at, and that they owned the corporation. Now, that conversation—he never mentioned any other corporation. That's the only one that was there, in that conversation, and they had incorporated what they had, and for him to go look at it, but there would be no sense, in my judgment, in going to look at something the corporation didn't own. There was no other conclusion you could draw other than everything out there was back of these bonds.

"Q. Didn't you testify a minute ago that he stated in your office that he and the Slusky boys had bought the land? A. Bought the land and incorporated and the land was theirs; they incorporated and they owned the corporation; that's exactly what he said.

"Q. After your associate counsel, Mr. Stephenson, here—A. That's what I told you this morning here; they owned it all."

Mr. Spector took $11,000 of the debentures in payment for materials. Later Playland Park Stadium Corporation defaulted in payment of interest on the debentures, had involuntary bankruptcy proceedings brought against it, avoided bankruptcy and is now maintaining its operations.

The trial court overruled the pleas of privilege and the appellants have perfected their appeal. Their one Point of Error on appeal is that the trial court erred in overruling and not sustaining their pleas of privilege in that the appellees wholly failed to meet the proof required under its controverting plea because J. H. Spector "testified absolutely to the contrary of his pleadings." Appellees pleaded an exception to the venue statute under Section 7, Art. 1995, Vernon's Ann. Civil Statutes, in their controverting affidavit. The appellants say in their argument that the proof does not show that any false representation was made by Mr. Fox to Mr. Spector at the time Mr. Spector was induced to accept the debentures in payment for one-half of the building materials he sold. They say that he testified that at the time he knew "everything belonged to Fox and the Slusky boys" and that the record showed that such statement was true; that the parties actually do own the land involved in this controversy.

■■ It is true that the statement made by Mr. Fox to Mr. Spector and Mr. Bennett in Mr. Bennett's office was true as far as it went, but it is equally clear that he withheld from both of them the important information that these individuals had formed not one but two corporations with very similar names. He did disclose the fact in Mr. Bennett's office that they were incorporating but under such circumstances we believe it was the duty of Mr. Fox to reveal further the fact that two corporations were formed and being formed, and further to reveal the exact nature of the interest in the land which Playland Park Stadium Corporation held under the terms of its sublease from Playland Park, Incorporated. The importance of such information is obvious, since such a disclosure would have revealed, if not to Mr. Spector, at least to his attorney, Mr. Bennett, that the so-called debentures were nothing more than unsecured promissory notes. The mere silence on the part of one does not alone constitute fraud, but where the circumstances impose on a person the duty to speak and he deliberately remains silent, such failure to speak constitutes fraud. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence and concealment in violation of this duty with intent to deceive amounts to fraud and is the equivalent to the assertion of a falsehood. See Peist v. Roesler, Tex.Civ.App.,

470

86 S.W.2d 787, and cases cited therein. Also, 37 C.J.S., Fraud, § 16, page 245. We believe that statements made by Mr. Fox to Mr. Bennett and Mr. Spector, even though truthful insofar as they disclose anything, were fraudulent in that they did not disclose all of the important features of the plan of incorporating twice and leasing and subleasing the property involved.

We believe, therefore, that the proof meets the requirements of Section 7 of Art. 1995, Revised Civil Statutes of Texas, the venue statute, and the trial court did not err in overruling the pleas of privilege of the appellants.

Affirmed.