CHASE COMMERCIAL CORPORATION, Appellant,

v.

DATAPOINT CORPORATION, Appellee.

No. 05–88–01303–CV.

Court of Appeals of Texas, Dallas.

June 27, 1989.

Rehearing Denied Aug. 8, 1989.

David M. Pruessner, Mark R. Randall, Dallas, for appellant.

Robert L. Knebel, Jr., John B. Gessner, Dallas, for appellee.

Before STEWART, BAKER and WHITTINGTON, JJ.

BAKER, Justice.

Chase Commercial Corporation appeals from an adverse judgment in a suit in which Chase alleged that Datapoint Corporation committed fraud and breach of contract. We sustain, in part, Chase's first and fifth points of error, reverse the trial court's judgment, and remand this cause for a new trial.

Chase sued Datapoint, alleging that Datapoint breached an agreement governing assignments of equipment leases and that Datapoint committed fraud. Datapoint had leased computer equipment to a company referred to as NTD and later assigned the two leases to Chase. Chase complained

that Datapoint failed to disclose to Chase the fact that NTD had gone into bankruptcy. The trial was before the court. After Chase rested, Datapoint moved for a directed verdict (in substance, a motion for judgment), which the trial court granted.

In its first point of error, Chase contends that the trial court erred in granting the motion for judgment because Chase proved as a matter of law each element of its causes of action for breach of contract and fraud. Chase argues in its fifth point of error that the trial court erred in granting the motion for judgment because Chase properly proved its damages.

■ Initially, we must determine the standard of appellate review that applies to this case. Datapoint contends that we must review only the factual sufficiency of the evidence supporting the trial court's judgment, relying on the recent case of *Qantel Business Systems, Inc. v. Custom Controls Co.*, 761 S.W.2d 302 (Tex.1988). In *Qantel*, the supreme court overruled longstanding rules governing appellate review of a trial court's grant of a motion for judgment in a nonjury trial. *See Qantel*, 761 S.W.2d at 304-05. Chase maintains that it would be unfair to apply the new rules announced in *Qantel* in this case. Chase notes that at the time of this trial, the supreme court had not yet rendered the *Qantel* decision.

We must determine if the supreme court's decision in *Qantel* should be applied retroactively. The operative rules prior to *Qantel* originated in 1943, when it was held that the granting of a motion for judgment in a nonjury trial is the legal equivalent of the granting of a directed verdict in a jury trial. *Qantel*, 761 S.W.2d at 303; *see Lorino v. Crawford Packing Co.*, 169 S.W.2d 235, 240 (Tex.Civ.App.—Galveston) (op. on reh'g), *aff'd*, 142 Tex. 51, 175 S.W.2d 410 (1943). Since those two actions were deemed equivalent, the appellate standard for reviewing the propriety of a directed verdict granted in a jury trial was held to be equally applicable to review of a granted motion for judgment in a nonjury trial. *See Rhinetubes, Inc. v. Norddeutscher Lloyd*, 335 S.W.2d 269, 274 (Tex.Civ.App.—

Houston [1st Dist.] 1960, writ ref'd n.r.e.); *Burkhardt v. Harris*, 200 S.W.2d 445, 446-47 (Tex.Civ.App.—Austin 1947, no writ). That familiar standard of review requires that the evidence be considered in the light most favorable to the party against whom judgment was rendered, disregarding all contrary evidence and inferences. If there is any evidence raising material fact issues, the judgment must be reversed. *See Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978).

When this standard of review was applied to an appeal from the grant of a motion for judgment in a nonjury trial, the appellate court had to reverse and remand if the record contained any evidence that would support a judgment in favor of the party against whom judgment was rendered. *See Stegman v. Chavers*, 704 S.W.2d 793, 794-95 (Tex.App.—Dallas 1985, no writ). In other words, the trial judge in a nonjury trial could grant a motion for judgment at the close of the plaintiff's case only when there was no evidence to support the plaintiff's cause of action. *Qantel*, 761 S.W.2d at 304. The trial judge was not authorized to rule on the factual sufficiency of the plaintiff's evidence. Moreover, the trial judge was not authorized to make findings of fact, and any purported findings were of no legal significance on appeal. *See Qantel*, 761 S.W.2d at 304; *Charter Int'l Oil Co. v. Tolson Oil Co.*, 720 S.W.2d 165, 167 (Tex.App.—Austin 1986, no writ); *Yarbrough v. Phillips Petroleum Co.*, 670 S.W.2d 270, 272 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

The supreme court noted in *Qantel* that these longstanding rules had been severely criticized because they fostered judicial inefficiency. The trial judge who was unpersuaded by the plaintiff's evidence, but could find some evidence supporting the plaintiff's claim, was required to hear the defendant's portion of the case. Only thereafter could the trial judge make a factual sufficiency ruling concerning the plaintiff's case. *See Qantel*, 761 S.W.2d at 304. The supreme court agreed with the criticisms of the old rules, overturned

them, and adopted new rules. The court stated:

> When a plaintiff rests, he indicates that he does not desire to put on further evidence, except by rebuttal testimony, and that he has fully developed his case. The defendant should not be forced to put on a defense on the chance that he will prove the plaintiff's claim. No useful result obtains by having the court hear the defendant's evidence when the judge, as trier of fact, is unpersuaded by the plaintiff's case. A more judicially efficient and economical procedure is to allow the trial judge, sitting as trier of fact and law, to rule on both the factual and legal issues at the close of the plaintiff's case and to make factual findings at that time if requested by a party.

*Qantel*, 761 S.W.2d at 304. The court remanded the *Qantel* case to the court of appeals for consideration of the factual sufficiency point of error which had not been addressed. *Qantel*, 761 S.W.2d at 305.

In the present case, Chase does not question the authority of *Qantel*, but it urges that retroactive application of *Qantel* to this case would be inequitable. The general rule is that a decision of the supreme court is to be retrospective in its operation. *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983). However, there are recognized exceptions when considerations of fairness and policy preclude full retroactivity. Determination of the issue turns primarily on the extent of reliance on the former rule and the foreseeability of a change in the law. *Sanchez*, 651 S.W.2d at 254. Procedural rules in effect at the time of trial have been held applicable on appeal. *See, e.g., Coker v. Mitchell*, 535 S.W.2d 175, 175–76 (Tex.1976) (per curiam).

We hold that *Qantel* should not be retroactively applied to the present case. The trial judge granted what she referred to as defendant's motion for directed verdict on September 15, 1988, almost three months before the supreme court's decision in *Qantel*. *See Qantel*, 761 S.W.2d 302. The trial court apparently treated the motion as a motion for directed verdict, although it was actually a motion for judgment. *See Qan-*

*tel*, 761 S.W.2d at 303. In any case, the grant of either kind of motion received identical appellate review prior to *Qantel*. Also, under pre-*Qantel* law, each had to be based on a finding that there was no evidence supporting the plaintiff's claims. We find it difficult to believe that the trial judge or either party thought otherwise. In its argument in support of its motion, Datapoint used language appropriate under the pre-*Qantel* rules. Datapoint argued that Chase had "failed to present any evidence" and had "completely failed to meet their [sic] burden of proof." The trial court, in its judgment, found that Datapoint's motion was "well taken and should be granted."

Presumably, Chase did not request findings of fact because at all relevant times it was not entitled to such findings. During oral argument, Chase represented to this Court that it did not request factual findings because of its reliance on pre-*Qantel* law. We are of the opinion that Datapoint presented its motion based on the ground that Chase had failed to present any evidence in support of its claims. Unless the trial judge was clairvoyant, we think that she granted the motion on that ground, since it was the only appropriate basis at the time.

The pre-*Qantel* rules, although criticized, had been routinely followed since 1943. *See Qantel*, 761 S.W.2d at 304. We are aware that the supreme court stated in *Qantel* that "[u]nder this opinion, the trial judge is presumed to have ruled on the sufficiency of the evidence." *Qantel*, 761 S.W.2d at 305. We think that this statement is entirely proper when applied to the *Qantel* case and to trial court rulings rendered after the decision in *Qantel*. However, under the authority of rules announced by the supreme court, we decline to apply *Qantel* retroactively to the present case. Although the prior law was criticized, we are of the view that its longstanding nature weighed in favor of the relative unforeseeability of a change in the law. In short, we think that it would be unfair to apply *Qantel* to this case. *See Sanchez*, 651 S.W.2d at 254; *Ex parte Hovermale*, 636 S.W.2d 828, 835–36 (Tex.App.—San An-

tonio 1982, no writ). In this case, the rules in effect at the time of the trial court's ruling should apply. *See Coker*, 535 S.W.2d at 175–76.

We therefore consider the evidence in the light most favorable to Chase, discarding all contrary evidence and inferences. If there is any evidence that would support a judgment in Chase's favor, we must reverse the trial court's judgment. *See Collora*, 574 S.W.2d at 68; *Stegman*, 704 S.W.2d at 795.

■ We first consider Chase's breach of contract cause of action in the context of Chase's points of error numbered one and four. In point of error number one, Chase contends that the trial court erred in granting Datapoint's motion for judgment because Chase proved each element of its cause of action for breach of contract. In its fourth point, Chase contends that the trial court erred in granting Datapoint's motion for judgment on the ground that Chase failed to prove the commercial reasonableness of its disposition of the collateral.[1] The determination of the efficacy of the trial court's actions depends on whether chapter 9 of the Texas Business and Commerce Code[2] applies to Chase's contract cause of action. Chase contends that it does not. Chase contends in the first place that it is inappropriate to characterize its suit as a "deficiency" suit. Chase argues that the strictures of chapter 9 concerning a creditor's duty to dispose of the collateral in a reasonable manner simply do not apply to the action between Chase and Datapoint. Relying on *Carroll v. General Electric Credit Corp.*, 734 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1987, no writ), Chase contends that the chapter 9 provisions are designed specifically to protect a debtor and not a third party to the transaction such as Datapoint. We disagree.

"Debtor" as defined under the Code means the person who owes payment or other performance of the obligation se-

cured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights, or chattel paper. § 9.105(a)(4) (Vernon 1968). Under the terms of the Program Agreement, the agreement upon which Chase bases its contract claim, when Datapoint entered into a lease agreement with a customer, Datapoint sold or assigned those leases to Chase. Chase acknowledges that in the industry such a transaction is referred to as the sale of "paper." There is no doubt that the transaction between Chase, Datapoint, and NTD is a financing arrangement. The record is clear that Chase has always characterized itself as a perfected secured creditor as to the collateral. The collateral consists of the computer equipment leased by Datapoint to NTD. Chase was a perfected secured creditor as Datapoint's assignee under a UCC Form 1 which was filed in June 1984. Under the terms of the Program Agreement, Datapoint was required to repurchase the assigned leases for the amounts due if Datapoint breached any warranty or obligation or if the lessee was in default and Chase decided that repossession was necessary.

A number of Texas cases have held that a guarantor is treated as a debtor under the provisions of section 9.504. *See Adams v. Waldrop*, 740 S.W.2d 32, 33 (Tex.App.—El Paso 1987, no writ); *Carroll*, 734 S.W.2d at 154; *Hernandez v. Bexar County Nat'l Bank*, 710 S.W.2d 684, 687 (Tex.App.—Corpus Christi), *writ ref'd n.r.e. per curiam*, 716 S.W.2d 938 (Tex.1986); *Peck v. Mack Trucks, Inc.*, 704 S.W.2d 583, 585 (Tex.App.—Austin 1986, no writ); § 9.504 (Vernon Supp.1989). We see no reason why a seller of chattel paper who owes other performance by way of repurchase of paper from its assignee should not likewise be held to be a "debtor" under the Code. In *Norton v. Nat'l Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538, 540 (1966), the Arkansas Supreme Court reached the same conclusion under similar circumstanc-

---

1. The record reflects that after securing a lift of the automatic stay in NTD's bankruptcy, Chase repossessed and sold the computer equipment leased to NTD.

2. All references to chapter 9 are to TEX.BUS. & COM.CODE ANN. §§ 9.101–9.507 (Tex. UCC) (Vernon 1968 & Vernon Supp.1989).

es. We agree with the Arkansas court that the illustration in the fourth official comment to section 9.105 is conclusive as to Datapoint's status as a debtor. *See* § 9.105 comment 4 (Vernon 1968). We hold as a matter of law that Datapoint is a "debtor." Since Datapoint is a debtor and an assignment of chattel paper is involved which is part of a commercial financing transaction, chapter 9 applies to this contract action. *See John Deere Co. v. Neal,* 544 S.W.2d 514, 516 (Tex.Civ.App.—Texarkana 1976, no writ).

■ Chase next argues that even if chapter 9 does apply, Datapoint cannot raise the issue because it failed to plead it. Chase contends that the lack of commercial reasonableness of disposition of the collateral is an affirmative defense which Datapoint was required to plead. As authority in support of this position, Chase relies on *Folkes v. Del Rio Bank and Trust Co.,* 747 S.W.2d 443 (Tex.App.—San Antonio 1988, no writ); *STRA, Inc. v. Seafirst Commercial Corp.,* 727 S.W.2d 591 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Schultz v. General Motors Acceptance Corp.,* 704 S.W.2d 797 (Tex.App.—Dallas 1985, no writ); *Sunjet v. Ford Motor Credit Co.,* 703 S.W.2d 285 (Tex.App.—Dallas 1985, no writ); *Ward v. First State Bank,* 605 S.W.2d 404 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); and *McCollum v. Parkdale State Bank,* 566 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1978, no writ).

We disagree with the view that the issue of disposition of collateral in a commercially reasonable manner is an affirmative defense that a debtor is required to raise. In *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769 (Tex.1982), the Texas Supreme Court held that in order for a creditor in a secured transaction to sue for a deficiency after disposition of collateral in a commercially reasonable manner, he must first comply with those provisions of section 9.504 which require giving notice to the debtor. *Tanenbaum,* 628 S.W.2d at 772. The court stated that if the disposition is commercially reasonable and if it follows any required notification, then and only then can the creditor sue for a defi-

ciency. *Tanenbaum,* 628 S.W.2d at 771. In our view, it is clear from *Tanenbaum* that in a creditor's suit for deficiency it is the creditor's burden to prove notice to the debtor and disposition of the collateral in a commercially reasonable manner. The creditor bears the burden of pleading and proving both of these aspects before he can recover a deficiency. *See Tanenbaum,* 628 S.W.2d at 771, 772; *Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.,* 749 S.W.2d 915, 918–19 (Tex.App.—Dallas 1988, no writ).

An affirmative defense is a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in its pleadings. *Highway Contractors, Inc. v. West Texas Equipment Co.,* 617 S.W.2d 791, 794 (Tex.Civ.App.—Amarillo 1981, no writ). Under our practice and procedure, a general denial puts a plaintiff upon proof of every fact essential to his case. The defensive plea of a general denial is sufficient to raise issues of fact with respect to every matter essential to the plaintiff's right of recovery save only those matters required to be denied under oath, and puts the burden on the plaintiff of proving all such matters. *See Trevino v. American Nat'l Ins. Co.,* 140 Tex. 500, 168 S.W.2d 656, 659 (Tex.Comm'n App.1943, opinion adopted); *Alexander v. Houston Oil Field Material Co.,* 386 S.W.2d 540, 543 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.).

To the extent that any decisions of our sister courts intimate, suggest, or otherwise hold that failure to give notice or failure to dispose of collateral in a commercially reasonable manner is an affirmative defense to be raised by the debtor, we decline to follow the same. To the extent that any prior decisions of this Court intimate, suggest, or hold that these are affirmative defenses to be raised by a debtor, we overrule such decisions. We hold that notice and the disposition of collateral in a commercially reasonable manner are essential elements of a creditor's suit to recover a deficiency, and the creditor bears the burden to plead and prove notice and disposition of the collateral in a commercially reasonable manner. A debtor's general denial puts the creditor to proof of such facts.

*See Tanenbaum,* 628 S.W.2d at 771, 772; *Daniell v. Citizens Bank,* 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ); *Whirlybirds Leasing v. Aerospatiale Helicopter Corp.,* 749 S.W.2d 915, 918–19 (Tex.App.—Dallas 1988, no writ); *FDIC v. Attayi,* 745 S.W.2d 939, 948 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Achimon v. J.I. Case Credit Corp.,* 715 S.W.2d 73, 76 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *M.P. Crum Co. v. First Southwest Sav. & Loan Ass'n,* 704 S.W.2d 925, 926 (Tex.App.—Tyler 1986, no writ); *Commercial Credit Equip. Corp. v. West,* 677 S.W.2d 669, 678 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Gentry v. Highlands State Bank,* 633 S.W.2d 590, 592 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd).

■ Chase also argues that even if Chase failed to prove proper disposition of the collateral, Chase was not barred from recovery because, under Texas law, the failure of a secured creditor to dispose of the collateral in a commercially reasonable way does not absolutely bar recovery. Chase contends that Texas law says that a defective sale merely creates a "rebuttable presumption" that the true value of the collateral was equal to the outstanding balance, relying on *Ward v. First State Bank,* 605 S.W.2d 404 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.), as authority to support this argument. Chase contends that *Tanenbaum* does not apply because *Tanenbaum* decided only a narrow issue. Chase argues that *Tanenbaum* does not reject the rebuttable presumption rule when the collateral is sold under the UCC as opposed to being retained by the creditor in satisfaction of the debt. We disagree.

In our view, although *Tanenbaum* does not directly overrule *Ward,* it impliedly does so. In *Tanenbaum,* the supreme court directly referred to another opinion rendered by the Fourteenth Court of Appeals in Houston which held that a creditor could retain the collateral without prior notice to the debtor, and that in his suit for deficiency he would only be faced with a rebuttable presumption that the value of

the collateral was equal to the underlying debt. *See Roylex, Inc. v. E.F. Johnson Co.,* 617 S.W.2d 760, 762 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The supreme court specifically stated that it held that the Houston court not only in *Roylex* but in *Tanenbaum* had misinterpreted chapter 9. The supreme court then stated that the only limits on the creditor's disposition of the collateral were that it must be commercially reasonable, and it must be made only after notification to the debtor if required by section 9.504. Then and only then is he entitled to sue for deficiency. *Tanenbaum,* 628 S.W.2d at 771. In our view, the rebuttable presumption theory in a secured transaction such as this is no longer viable in Texas, and *Ward* is no longer good law.

The record reflects and Chase conceded at oral argument that there is no evidence of either notice or disposition of the collateral in a commercially reasonable manner. In such a situation, there is no evidence to support Chase's claim for recovery of a deficiency under its contract theory, and the trial court was correct in concluding that Datapoint was entitled to a judgment as a matter of law on that theory. *See Stegman,* 704 S.W.2d at 794.

With respect to its fraud claim, Chase contends that it proved each element of its cause of action as a matter of law and that the trial court erred in granting Datapoint's motion for judgment. Chase has gone further than necessary to establish error on the trial court's part. Since we have determined that we must review the trial court's action using the pre-*Qantel* standards of review, we are required to determine if there is any evidence supporting Chase's claim of fraud. *See Stegman,* 704 S.W.2d at 795. Chase argues in its fifth point of error that the trial court erred in granting the motion for judgment because Chase properly proved its damages.

■ When circumstances impose upon a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986).

Where there exists a duty of disclosure, a deliberate suppression of material facts constitutes fraud. *State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 681 (Tex. App.—El Paso 1984, writ dism'd by agr.). One who fails to disclose to another something which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to liability as though he had represented the nonexistence of the matter which he failed to disclose if he is under a duty to disclose the matter. *Phillips Petroleum Co. v. Daniel Motor Co.*, 149 S.W.2d 979, 987 (Tex.Civ. App.—Eastland 1941, writ dism'd judgmt cor.). Where the law imposes a duty on a party to disclose all material facts known to him and not known to the other, silence and concealment in violation of this duty with intent to deceive amounts to fraud. *Playland Park Stadium Corp. v. J.H. Spector & Sons*, 253 S.W.2d 466, 469 (Tex. Civ.App.—Beaumont 1952, no writ). Based on the foregoing, we determine that when there is a duty to disclose material known facts that are unknown to the other party, failure to disclose such facts with intent to deceive (or deliberateness), accompanied by reliance or inducement, constitutes fraud.

■ Chase alleged that Datapoint committed fraud by failing to disclose the fact that NTD, the lessee, had gone into bankruptcy. We have examined the record in this case, and we find that there is some evidence of the elements of fraud. The Program Agreement entered into by the parties provided:

> In each instance where Datapoint shall wish to sell Paper to Chase, Datapoint will, at the earliest feasible date, furnish Chase with ... (d) a complete copy of the proposed Lessee's/Debtor's available financial statements including all notes thereto ..., and (e) such other credit and financial information which is in the possession of Datapoint.

This provision is probative evidence of a duty to disclose facts. The fact that both parties agreed to this provision is evidence that they regarded as material any credit and financial information about a lessee/debtor. A fact finder could surely find that the bankruptcy of a lessee/debtor constitutes material credit and financial information. Therefore, there is evidence that Datapoint had a duty to disclose material facts, and that NTD's bankruptcy was such a material fact.

Among the exhibits in this case is NTD's bankruptcy petition filed August 17, 1984. It lists Datapoint as an unsecured creditor. Another exhibit is a "Notice for Meeting of Creditors Combined With Notice of Automatic Stay and Appointment of Creditors' Committee." This document indicates that notice of NTD's bankruptcy was mailed to creditors (one of which was Datapoint) on August 20, 1984. Datapoint filed a Proof of Claim, dated September 17, 1984, in NTD's bankruptcy. Thus, there is more than some evidence that Datapoint was aware of NTD's bankruptcy. There are exhibits that show that Datapoint's first and second assignments of NTD paper to Chase occurred on September 14 and October 16, 1984.

Although Datapoint suggests that there was evidence that Chase knew of NTD's bankruptcy before December 1984, the trial court was required to disregard such evidence in ruling on Datapoint's motion for judgment. We disregard it on appellate review. In any case, because the timeframe referred to lacks precision, it does not necessarily negate Chase's fraud claim. There are exhibits indicating that Chase funded the two sales of paper from Datapoint to Chase on October 9 and December 13, 1984. We think that a trier of fact could reasonably infer from these facts that Chase was unaware of NTD's bankruptcy as of December 13, 1984. Therefore, there is some evidence that Chase did not know about NTD's bankruptcy.

■ In its answer to one of Chase's requests for admissions, Datapoint stated that it did not advise Chase of NTD's bankruptcy at any time between August 17, 1984 (the date of commencement of the bankruptcy) and October 5, 1984. This is certainly evidence of failure to disclose. As to reliance or inducement, we think that the contract provision quoted earlier is evidence that the parties contemplated that

Chase would rely on credit and financial information provided by Datapoint. A fact finder could determine that Chase acted in conformity with the parties' contemplation. We also view Chase's payments for the assignments as some evidence of reliance or inducement.

■ As to intent to deceive or deliberateness, proof of intent is almost always made by circumstantial evidence, since it depends on determining the hidden purposes of the mind. The element of intent is peculiarly a question for the trier of fact. In determining intent, the fact finder can look to the circumstances, the relationship, and the interests of the parties, the nature of their transaction, the failure to perform, and the nature of any efforts to perform. *See Duval County Ranch Co. v. Wooldridge*, 667 S.W.2d 887, 894–95 (Tex.App.—Austin 1984, no writ); *see also Spoljaric*, 708 S.W.2d at 434–35. When misrepresentations involve a promise to perform an act in the future, if the defendant denies having made the promise, that circumstance along with failure to perform will justify a finding of fraudulent intent. *See Spoljaric*, 708 S.W.2d at 435; *Wooldridge*, 667 S.W.2d at 894–95.

The rule that denial of a promise coupled with failure to perform the promise constitutes some evidence of fraudulent intent is applied where misrepresentations involve a promise to do an act in the future. *See Spoljaric*, 708 S.W.2d at 434–35; *Wooldridge*, 667 S.W.2d at 894–95. In the present case, the alleged fraud involves a failure to disclose material facts in the face of a duty (or promise) to disclose such facts. When Datapoint acknowledged that it did not advise Chase of NTD's bankruptcy, Datapoint also denied that it had any duty to so inform Chase. We view this situation as closely analogous to the denial of a promise accompanied by a failure to perform the promise. We therefore conclude that the rule regarding intent that applies in fraudulent promise cases is applicable in this case. In other words, Datapoint's acknowledged failure to disclose NTD's bankruptcy coupled with its denial of any duty to disclose it is evidence of

fraudulent intent. We think that a trier of fact could examine the circumstances shown in the record and find therefrom intent to deceive or deliberateness.

■ The party alleging actionable fraud must also establish that he suffered injury because of the fraud. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977). Generally, fraud which forms the basis of a plaintiff's case must be the cause of a claimed loss. There must be pleading and proof of a pecuniary loss suffered which is directly traceable to and which resulted from the false representation upon which the injured party relied. *Mumphord v. First Victoria Nat'l Bank*, 605 S.W.2d 701, 704 (Tex.Civ.App.—Corpus Christi 1980, no writ). As already noted, remaining silent when one has a duty to speak is equivalent to a false representation. *See Spoljaric*, 708 S.W.2d at 435. The measure of damages in fraud cases is the actual amount of the complaining party's loss resulting directly and proximately from the fraud practiced upon him. The desired end is actual compensation for the injury, not profit. *Morriss–Buick Co. v. Pondrom*, 131 Tex. 98, 113 S.W.2d 889, 890 (Tex.Comm'n App.1938, opinion adopted); *Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 335–36 (Tex.App.—Austin 1984, no writ).

We hold that there is some evidence in the record of Chase's damages. There are trial exhibits indicating the amount that Chase paid to Datapoint for the assignments of the two leases. There is a trial exhibit entitled "Charge–Off Recommendation Worksheet" dated July 31, 1985, indicating the amount owed on the two NTD leases. This document also indicates that the computer equipment was repossessed and sold for $15,410. This certainly constitutes some evidence of the pecuniary injury suffered by Chase and allegedly caused by Datapoint's fraud. Since the amount of damages should not include lost profits, the measure of damages would apparently be the amounts paid by Chase to Datapoint in reliance upon Datapoint's failure to disclose less the amount received when the collateral was sold.

We find that there is some evidence in the record of all essential elements of Chase's claim that Datapoint committed fraud. We sustain Chase's first and fifth points of error insofar as they pertain to the fraud cause of action.

Because this case must be retried, we find it necessary to discuss Chase's third point of error. In this point, Chase contends that the trial court erred in excluding deposition testimony concerning the effect of the lessee's bankruptcy on the parties' obligations under the Program Agreement. At trial, Chase offered the deposition testimony of Lee McCarty, a Datapoint employee. Chase offered this testimony on the basis that it would show proof of Datapoint's knowledge that if Chase was aware of NTD's bankruptcy, Chase would have rejected the assignment of the NTD leases from Datapoint. In his deposition, McCarty testified that if he knew a customer of Datapoint was in bankruptcy, he would not assign such a lease to Chase and would not send it to it. The trial court excluded this evidence in response to objection that the questions called for speculation on the part of the witness. Chase's bill of exceptions reflects that McCarty was the Datapoint employee who had dealt directly with Chase since the parties' relationship began in 1981 and that he had worked side by side with Chase personnel during this time. McCarty testified that if he knew something was bad, he would make Chase aware of it. One of the relevant issues concerning Chase's fraud claim is the question of NTD's bankruptcy and its impact on the Program Agreement between Chase and Datapoint.

Datapoint argues that if a witness is not testifying as an expert, and even though a lay witness is generally permitted to testify to facts within his personal knowledge, such a witness is not permitted to express opinions or speculate. It also argues that a witness's conclusions and opinions of ultimate fact are inadmissible in a civil case. We note that the authorities relied upon by Datapoint predate the adoption of the Texas Rules of Civil Evidence. Under these rules, if the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. TEX.R.CIV.EVID. 701. In our view, under the facts of this case, McCarty's opinions and inferences are both rationally based upon his perception and helpful to a determination of a fact in issue. The trial court abused its discretion in excluding McCarty's testimony.

We reverse the trial court's judgment and remand this cause for a new trial on the claim of fraud in accordance with this opinion.