

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-10-00354-CV

## IN RE DOROTHEA BAKER AND KEITH BAKER

_____

## Original Proceeding

## MEMORANDUM OPINION

Dorothea Baker and Keith Baker seek mandamus relief on the trial court's order sustaining the objections of Chrysler Group, LLC (Chrysler) and Hill County Automotive Products, LLC d/b/a Mike Craig Chrysler Dodge Jeep – Hillsboro (Craig) to several of the Bakers' discovery requests.

### The Bakers' Allegations

The Bakers' petition in the trial court alleges that Dorothea purchased for Keith a new 2008 Dodge Ram pickup truck from Craig for approximately $30,000. Five months and 6,200 miles later, Keith took the truck to the Waco Dodge dealer because of an engine problem. Waco Dodge determined that an injector had failed because of contaminated diesel fuel, and the Bakers were informed that the injector was damaged

because of water in the diesel fuel. They have since learned that it is not uncommon for diesel fuel to be "contaminated" with water and that there have been "numerous other instances involving the same complaints with Dodge diesel engines in the most recent products."[1] The problem is even extensively addressed in the owner's manual, which explains the "water in fuel indicator" light and how to drain the fuel/water separator filter when the warning light comes on.

The Bakers allege that the injector was replaced at a cost of approximately $2,000, but DaimlerChrysler, the manufacturer, denied coverage under the warranty. Furthermore, the truck still did not run properly, and Waco Dodge informed the Bakers that, in all likelihood, all of the injectors had been exposed to the same contaminated diesel fuel and would fail in the same way. Waco Dodge also told the Bakers that it could not guarantee its work unless the remaining five injectors were replaced at a cost of approximately $10,000. DaimlerChrysler continued to deny warranty coverage, and the Bakers refused to pay for the repairs and stopped making payments on the truck, which the lender (Chrysler Financial) then repossessed.

**The Bakers' Claims**

The Bakers sued DaimlerChrysler[2] and Craig for breach of contract, breach of warranty, violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, civil

---

[1] The owner's manual states: "Diesel fuel is seldom completely free of water."

[2] Soon thereafter, DaimlerChrysler filed for bankruptcy, which stayed the proceedings. Chrysler then purchased substantially all of the assets previously owned by DaimlerChrysler, but it assumed only certain limited liabilities associated with vehicles manufactured and warranted by DaimlerChrysler. Accordingly, the Bakers' live petition now states that they seek no remedies in this action against DaimlerChrysler and seek only those remedies against Chrysler that it has assumed the obligation to pay, which includes certain warranty obligations.

conspiracy, and negligence.  The gist of their suit is that DaimlerChrysler and Craig knew of the problem with this truck's fuel/water filter and injectors yet sold the truck anyway without disclosing the problem, while maintaining that injector damage caused by the problem is not covered by the warranty.  They plead:

> It is the routine practice of Craig and other dealers like it to withhold this information from its customers and the routine practice of Chrysler to refuse to repair the injector problems when they arise under warranty.  Of course, had such information been provided, the Bakers would never have purchased the vehicle in the first place.
>
> ….
>
> Craig, in withholding the information about the problem with the injectors from the Bakers and other customers, while Chrysler then denies warranty service when the problem arises, engages in a civil conspiracy....

### Discovery Requests and Rulings at Issue

The Bakers served Chrysler with the following interrogatories and requests for production:

> **INTERROGATORY NO. 5:**  Identify by customer/purchaser name, address, and telephone number and date all reports and/or complaints made or received by Chrysler, either directly or through any of its dealers or other sources concerning the failure of or problems with the ejectors [sic] in engines like that in the vehicle in question resulting from or connected with alleged water in the fuel used in said engines.
>
> **INTERROGATORY NO. 6:**  Identify by name or title and by location any and all documents or records of any kind whatsoever, whether created and/or stored electronically, manually, or mechanically that constitute or tend to evidence each of the reports or complaints made the subject of Interrogatory 5 above.
>
> **INTERROGATORY NO. 7:**  Identify by city, county, state, cause number, and /or any dealer in Chrysler products or other party purporting to act on behalf or to represent Chrysler in any capacity arising out of or connected in any way with the failure of or problems with the injectors in

engines like that in the vehicle in question resulting from or connected with alleged water in the fuel used is [sic] said engines.

**REQUEST NO. 5:**  Any and all documents identified by defendant in its answer to Interrogatory 6 above.

Chrysler objected to these interrogatories and requests on grounds that each is "vague, overly broad, unduly burdensome, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  During a hearing on the objections, the Bakers' counsel clarified for the trial court:  "Our whole lawsuit is based on the diesel engines in these trucks in 2007 and 2008.  And the inquiry is to vehicles with engines like the one involved in this transaction.  That's what we're asking."  *Cf. Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732 (Tex. 1983) (orig. proceeding) (holding that discovery was to be limited in scope to that represented by plaintiffs' counsel in trial-court hearing and in mandamus pleading).  The trial court sustained the objections.

The Bakers also served Craig with the following pertinent interrogatory and requests for production:

> **INTERROGATORY NO. 23:**  Identify by name or title and by location any and all documents of any kind whatsoever, whether created and/or stored electronically, manually, and mechanically, that demonstrate or tend to evidence by vehicle identification number all 2008 and 2009 Dodge vehicles powered by 6.7 liter Cummins diesel engines sold by defendant at any time through June 30, 2009.
>
> **REQUEST FOR PRODUCTION NO. 15:**  All documents identified by defendant in its answer to Interrogatory 23 above.
>
> **REQUEST FOR PRODUCTION NO. 16:**  The warranty and service histories on each of the vehicles identified in the documents identified by defendant in its answer to Interrogatory 23 above.

**REQUEST FOR PRODUCTION NO. 17:** All communications sent or received by defendant over its "Dealerconnect" system to or from Chrysler Group LLC or any predecessor in interest; any other entity purporting to act on behalf of Chrysler Group LLC or any predecessor in interest in any capacity; or any other dealer in "Chrysler products concerning any problems with injectors in 6.7 liter Cummins diesel engines related in any way to fuel contamination between October 1, 2007 and June 30, 2009.

As to Interrogatory No. 23 and Request Nos. 15 and 16, Craig objected that each is

vague, overbroad, unduly burdensome and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The Defendant objects to this [Interrogatory or Request, respectively] to the extent it seeks information that would violate the Defendant's customer's right to privacy, that may be used to annoy, embarrass, oppress and harass Defendant's customers and former customers that are not parties to this litigation.

Likewise, Craig objected that Request No. 17 "is vague, ambiguous, overbroad, and seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."

The Bakers filed a motion asking the trial court to reconsider its previous order sustaining Chrysler's objections and to overrule Craig's objections to the discovery requests. After a hearing, the trial court signed an order stating that it was denying the relief sought by the Bakers in its entirety, that it

further FINDS that the discovery sought by the Plaintiffs exceeds the reasonable scope of discovery given that the burden of the proposed discovery outweighs its likely benefit taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake and the importance of the proposed discovery in resolving the issues.

The order also sustained Chrysler's and Craig's objections to the discovery requests.

**Standard of Review**

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Colonial*, 968 S.W.2d at 941. The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a). This broad grant, however, is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

**Relevance**

We must first address whether the discovery sought is relevant to the subject matter of this case.

> In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

TEX. R. CIV. P. 192.3(a). The phrase "relevant to the subject matter" is to be "liberally

construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009).

The Bakers argue that the discovery they request is relevant to the subject matter of their claims and reasonably calculated to lead to the discovery of admissible evidence because of the nature of their claims against Craig. The Bakers allege that Chrysler and Craig knew of numerous complaints by buyers about problems like that experienced by the Bakers but that Craig did not disclose it to the Bakers when they purchased the truck. Although Chrysler assumed only limited liabilities associated with vehicles manufactured and warranted by DaimlerChrysler and the Bakers seek only those remedies against Chrysler that it has assumed the obligation to pay, the Bakers have sued Craig for fraud, conspiracy, and violations of the DTPA laundry list, including subsections 17.46(b)(7) and (24).[3]

---

[3] The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *Bright v. Addison,* 171 S.W.3d 588, 599 (Tex. App.—Dallas 2005, pet. denied).

To prevail on the DTPA claim, the Bakers must establish: (1) that they were consumers; (2) that Craig engaged in at least one of the laundry list items; (3) that they detrimentally relied on the false, misleading, or deceptive act or practice; and (4) that the false, misleading, or deceptive act or practice was a producing cause of their injury. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). Subsections 17.46(b)(7) and (24) of the DTPA provide that "false, misleading, or deceptive acts or practices" include "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" and "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Tex. Bus. & Com. Code Ann. § 17.46(b)(7), (24) (Vernon Supp. 2010).

Whether trucks similar to the one purchased by the Bakers have had problems similar to those experienced by the Bakers' truck is relevant to these pleaded causes of action for discovery purposes to show Craig's and Chrysler's knowledge of the alleged filter and injector problem and Craig's alleged concealment of the problem from the Bakers. And while the Bakers have not sued Chrysler for fraud, DTPA violations, and conspiracy, the subject matter of the discovery requests to Chrysler is reasonably calculated to lead to the discovery of admissible evidence on the claims against Craig for fraud, DTPA violations, and conspiracy.[4] In other words, Chrysler may possess documents and information relating to the alleged DTPA, fraud, and conspiracy claims against Craig: For example, what Chrysler knew about the alleged filter and injector problem and what information about it was shared between Chrysler and Craig (as sought in Request No. 17 to Craig) would be discoverable by a request that is not overly broad. Furthermore, Chrysler makes no argument why it should not have to produce discovery that is relevant to the claims that are being asserted only against Craig.[5] In conclusion, the subject matter of the Bakers' discovery requests is relevant in this case. *See* TEX. R. CIV. P. 192.3(a).

Chrysler and Craig respond in part to the Bakers' relevancy argument by stating that the Bakers have not produced any evidence of alleged fraud, conspiracy, or

---

[4] Fraud is typically proved by circumstantial evidence. *See Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986); *Chase Comm'l Corp. v. Datapoint Corp.,* 774 S.W.2d 359, 367 (Tex. App.—Dallas 1989, no writ), *abrogated on other grounds by Greathouse v. Charter Nat'l Bank-Southwest,* 851 S.W.2d 173 (Tex. 1992). So too is conspiracy. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex. 1969) ("proof of a conspiracy may be, and usually must be made by circumstantial evidence").

[5] In their motion to reconsider, the Bakers stated that Chrysler has agreed to indemnify and defend Craig in this case. Chrysler and Craig are represented by the same counsel.

concealment and are attempting to engage in "an unnecessarily expansive fishing expedition." The Bakers are not required to produce such evidence as a prerequisite to obtaining discovery from Chrysler and Craig. Furthermore, the case relied upon by Chrysler and Craig, *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491 (Tex. 1995), is distinguishable because there the plaintiff sought discovery on several unpleaded claims, thus rendering the discovery request overly broad. The Bakers' case is not "a simple warranty denial case," as Chrysler and Craig argue. Rather, the Bakers have already sued Craig for fraud, DTPA violations, and conspiracy. Thus, the Bakers' discovery requests to Chrysler and Craig are not "fishing expeditions" like that prohibited in *Dillard*.

## Overbreadth

Chrysler and Craig also argue generally that the Bakers' discovery requests are vague and overly broad because they include phrases like "any and all," "documents or records of any kind whatsoever," "any problems," "in any way," "that constitute," and "tend to evidence." Chrysler and Craig point specifically to Interrogatory No. 5, arguing that it contains numerous vague terms, is unlimited in time frame, is not limited to the model and year of the Bakers' truck, and is not limited to any geographic area or to Craig.

Having reviewed the discovery requests, we cannot conclude that the trial court abused its discretion in sustaining Chrysler's vagueness objection to Interrogatory No. 7

because it is vague and unclear as worded.[6]  As for the other discovery requests at issue, and irrespective of our relevance discussion, we find that the Bakers' counsel essentially admitted that the discovery requests at issue are overly broad.  He told the trial court: "Our whole lawsuit is based on the *diesel engines in these trucks in 2007 and 2008*.  And the inquiry is to *vehicles with engines like the one involved in this transaction*.  That's what we're asking."  [Emphases added.]  Because the discovery requests exceed the scope stated by counsel, and because they can be redrawn to more narrowly request what counsel claims is needed, we cannot say that the trial court abused its discretion in sustaining the overbreadth objections.

Accordingly, we deny the petition without prejudice to the Bakers' ability to redraw more narrowly the discovery requests at issue in accordance with any new scheduling order or discovery control plan entered by the trial court.  *See* TEX. R. CIV. P. 190.5.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray concurs with a note)*
Petition denied
Opinion delivered and filed May 4, 2011
[OT06]

**\***(Chief Justice Gray concurs in the judgment denying the Petition for Writ of Mandamus.  A separate opinion will not issue.  He notes, however, that he joins only

---

[6] Interrogatory No. 7, as worded, is from Chrysler's discovery responses.  Because the Bakers' served version of this interrogatory is not in the mandamus record, we cannot discern if the unintelligibility is the result of typographical errors.

the section of the opinion entitled "Overbreadth" and thus would find it unnecessary to elaborate further. But to the extent that the opinion implies that the interrogatories and request for production seek relevant information Chief Justice Gray notes that certainly as to the allegations of fraud and violations of the DTPA, vehicle problems that the defendants became aware of after the April 2008 date of purchase of the pick-up would be irrelevant. Further, it is unclear to Chief Justice Gray whether the "overbreadth" section includes in its consideration that the request as drafted and ruled upon would have required the production of personal consumer information for purchasers from all over the world and which may be subject to some of the other proper objections that were made and sustained even if the discovery is more narrowly drawn. And since the Bakers have disavowed that they are seeking anything other than warranty damages against Chrysler, information that only Chrysler knew about such complaints or problems would not be relevant to their fraud and DTPA claims against Craig. Thus, while Chief Justice Gray agrees that the Bakers have the opportunity to pursue their discovery by redrawing their discovery request, those request must, nevertheless, be written in such a manner as to limit them to their proper scope with regard to the claims being made against each defendant and which redrawn discovery request, if made, will be subject to the full panoply of objections.)