**FIRST REPUBLICBANK FORT WORTH, N.A., et al.**

v.

**NORGLASS, INC.**

**Civ. A. No. CA4–88–712–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 3, 1990.

As Amended Dec. 7, 1990.

As Amended Jan. 2, 1991.

Jack C. Wessler, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for plaintiffs First RepublicBank Fort Worth, N.A., First RepublicBank S.W. Arlington, N.A. and Interfirst Bank S.W. Arlington, N.A.

William Frank Carroll, John Mitchell Nevins, and Bruce L. Collins III, Baker, Glast & Middleton, P.C., Dallas, Tex., for plaintiffs Federal Deposit Ins. Corp. and N.C.N.B. Texas Nat. Bank.

William L. Kirkman, Nancy S. Adams, Debra D. Daniel, Bourland & Kirkman, Fort Worth, Tex., for defendants.

MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

This action was removed to this court from a state district court of Tarrant County, Texas, almost three months after final judgment had been entered by the state court in favor of defendant, Norglass, Inc. ("Norglass"), denying plaintiff, First RepublicBank SW Arlington, N.A., formerly InterFirst Bank SW Arlington, N.A. ("First RepublicBank"), any recovery. Immediately prior to, and on the same day of, the removal (1) Federal Deposit Insurance Corporation ("FDIC"), "in its separate corporate capacity ... as the provider of certain

indemnities and assistance to NCNB Texas National Bank," and (2) NCNB Texas National Bank ("NCNB"), as "assignee of the Federal Deposit Insurance Corporation, as receiver of First RepublicBank Fort Worth, N.A.", intervened in the state court action. The removal petition was filed by FDIC, in the capacity mentioned above, and NCNB.

### Memorandum Opinion

FDIC and NCNB, intervenors, have filed, in a single instrument, motions for relief from judgment and for summary judgment, and Norglass has filed a motion for summary judgment. The court has determined that intervenors' motions should be denied and defendant's motion should be granted.

### A. *The State Court Litigation from its Commencement to Removal:*

On January 29, 1987, InterFirst Bank S.W. Arlington, N.A. ("InterFirst"), the predecessor of First RepublicBank, instituted suit against Norglass for recovery of damages alleged to have been suffered by InterFirst because of Norglass's conduct in causing payment to be stopped on a $94,-474.16 check given by Norglass, as drawer, to InterFirst and another entity, as payees. Norglass filed its answer in March 1987.

The state court litigation was active from January 1987 until it was removed to this court in October 1988. At an early stage of the state court litigation Norglass filed pleadings by which it made known and asserted, among others, the defenses of waiver and estoppel. Both parties to the litigation were represented throughout by highly competent attorneys. The parties engaged in extensive discovery, including the noticing of the depositions of InterFirst, through its designated representatives, and Norglass, through its designated representatives. Each party filed a motion for summary judgment. InterFirst filed an amended motion for summary judgment, which was heard in December 1987, at which time the court denied the motion except as to a procedural aspect of the case relating to a declaratory judgment request Norglass had made by way of counter-claim. The parties had full opportunity to explore and develop the facts and applicable law prior to trial in the state court.

The case went to trial before a state court jury on July 18, 1988. On July 20, 1988, the jury returned its verdict on special questions, the answers to which established that (1) the check was conditionally delivered, or delivered for a special purpose, by Norglass, (2) by reason of having failed to inform Norglass of another entity's financial condition, InterFirst was estopped from asserting its right, if any, to enforce the check, and (3) InterFirst waived its right, if any, to enforce the check. Norglass moved for judgment on the verdict, and InterFirst (which, by then, was being identified in the suit papers as either "First RepublicBank Fort Worth, N.A., formerly InterFirst Bank S.W., Arlington, N.A." or "First RepublicBank S.W. Arlington, N.A., formerly InterFirst Bank S.W. Arlington, N.A.") moved for judgment notwithstanding the verdict.

On July 28, 1988, the court signed a judgment, based on the jury's verdict "along with the undisputed evidence", by which "First RepublicBank SW Arlington, N.A., formerly InterFirst Bank SW Arlington, N.A." was denied any recovery from Norglass, and all costs of suit were taxed against plaintiff.

On August 26, 1988, the court overruled plaintiff's motion for judgment notwithstanding the verdict. During that same day a lengthy a motion for new trial was filed by "First RepublicBank Fort Worth, N.A., formerly InterFirst Bank S.W. Arlington, N.A.," asking that the July 28, 1988, judgment be set aside and a new trial be granted. Norglass made written response to this motion. On September 27, 1988, the court heard plaintiffs' motion for new trial and signed an order denying it.

On October 24, 1988, FDIC filed in the state court its plea in intervention "in its separate corporate capacity ... as the provider of certain indemnities and assistance to NCNB Texas National Bank" and NCNB filed its plea in intervention as "assignee of the Federal Deposit Insurance Corporation ... as receiver of First Repub-

licBank Fort Worth, N.A." Intervenors alleged in their pleas that the action had been instituted in January 1987 by "First RepublicBank Fort Worth, N.A. (f/k/a First RepublicBank S.W. Arlington, N.A., f/k/a InterFirst Bank S.W. Arlington, N.A.)"; that on July 29, 1988, the Comptroller of the Currency declared First RepublicBank Fort Worth, N.A., insolvent and appointed FDIC as receiver; that FDIC, as receiver, then assigned to NCNB certain assets, including those of First RepublicBank Fort Worth, N.A.; that, pursuant to 12 U.S.C. § 1821 and § 1822, FDIC agreed to provide certain indemnities and assistance to NCNB; that any disposition of the action in the absence of FDIC might, as a practical matter, impair and impede FDIC's ability to provide certain indemnities and assistance to NCNB in this case; that NCNB had a clear interest in the subject matter of the action and in the claims asserted by First RepublicBank Fort Worth, N.A.; and, that any disposition of the action in the absence of NCNB might, as a practical matter, impair or impede NCNB's ability to protect its interests with respect to assets assigned to NCNB and involved in the action.

On the same day the pleas of intervention were filed, FDIC, "in its separate corporate capacity ... as the provider of certain indemnities and assistance to NCNB National Bank," and NCNB filed the petition for removal by which the action was removed to this court.

The pleas in intervention and petition for removal were filed two days prior to the expiration of the period of time within which an appeal from the July 28, 1988, judgment could have been perfected under state law. Tex.R.App.P. 41(a)(1). Neither the plaintiff nor either of the intervenors in the state court action perfected an appeal from the judgment pursuant to state procedure.

B. *Activity in this Court After Removal:*

After the removal, Norglass filed a motion to dismiss or, in the alternative, to remand. Norglass's motions were denied by order entered March 28, 1989.

On the assumption that after removal of the action to this court the Federal Rules of Appellate Procedure governed the perfection of an appeal, the deadline for the perfection of an appeal by plaintiff or intervenor to the U.S. Court of Appeals for the Fifth Circuit from the July 28, 1988, judgment was, at the latest, November 28, 1988. Fed.R.App.P. 4(a)(1) and (4); 26(a). This assumes that the motion for new trial filed in the state court should be treated as a "timely motion under the Federal Rules of Civil Procedure ... filed in the district court." Fed.R.Civ.P. 4(a)(4). None of them took steps to perfect such an appeal. Thus, the July 28, 1988, judgment became a final unappealable judgment no later than November 28, 1988.

The first initiative any party to this action took to set aside or modify the July 28, 1988, judgment after the state court motion for new trial was denied on September 27, 1988, was the filing on October 18, 1990, by intervenors, FDIC and NCNB, of a motion for relief from judgment and motion for summary judgment. Between the date of removal and October 18, 1990, the only things either of the intervenors had filed were (1) their joint opposition, filed in November 1988, to Norglass's motion to dismiss and alternative motion to remand, (2) the joinder by NCNB in February 1990 in an agreed motion for continuance and to modify setting schedule, and (3) the joinder by NCNB in a designation of experts filed September 10, 1990.

Other than to be named in "Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, or, in the Alternative, Motion to Remand" filed in March 1989, the plaintiff in the state court action has not made any appearance or engaged in any activity in this court since removal. Two instruments filed since removal (the February 26, 1990, agreed motion for continuance and to modify order setting schedule and the September 10, 1990, designation of experts) recite that they are being filed by FDIC "as receiver of First RepublicBank Fort Worth, N.A.," but there has been no formal substi-

tution of parties to cause FDIC in its capacity as receiver of First RepublicBank Fort Worth, N.A., to be a party to this action. In certain of the documents filed since removal, one or both of the intervenors refer to themselves as "plaintiff" or "plaintiffs."

C.  *The Point in Time when the "Superpower Defenses" were First Mentioned in this Action:*

Though intervenors contend that commencing on July 29, 1988, the very day after the July 28, 1988, judgment was signed, they each had the right to intervene in this action and to assert the "superpower defenses" provided by federal statutory and common law under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941), and its progeny, 12 U.S.C. § 1821(n)(4)(I) (1990), 12 U.S.C. § 1823(e) (1990), and the federal holder in due course doctrine, none of those theories was urged, or even mentioned, in any paper filed by any party to this action until they were urged two years and three months later by intervenors in the motions for relief from judgment and for summary judgment they filed on October 18, 1990. Put another way, plaintiff and the intervenors failed to avail themselves of the opportunities they had to make known and assert whatever superpower defenses they might have had:[1]

1.  when the plaintiff filed its motion for judgment notwithstanding the verdict in the state court;

2.  when the plaintiff filed its motion for new trial on August 26, 1988, in the state court;

3.  when FDIC and NCNB filed their pleas in intervention in the state court;

4.  when plaintiff and intervenors neglected to pursue an appeal in the state court system urging those defenses; and

5.  when plaintiff and intervenors neglected after removal, while there was time left for the perfection of an appeal to the Fifth Circuit for the purpose of asserting the superpower defenses, to perfect such an appeal.

When the superpower defenses were asserted in the October 18, 1990, motions, they were presented by FDIC and NCNB as grounds for relief pursuant to Fed.R. Civ.P. 56 and 60. The thrust of the motions is to request this court to completely disregard the final unappealable state court judgment of July 28, 1988, and to relitigate the matter as if the state court proceedings had never occurred.

D.  *Failure of Plaintiff and Intervenors to Pursue Avenues of Relief Available Following Removal:*

The Court is not revisiting the issue of propriety of the removal, but notes in passing that there is reason to question whether the removal was proper. *See e.g. FDIC v. Loyd*, 744 F.Supp. 126, 129 (N.D.Tex. 1990); *FDIC v. Norwood*, 726 F.Supp. 1073, 1075 (S.D.Tex.1989); *Addison Airport of Texas, Inc. v. Eagle Investment Co.*, 691 F.Supp. 1022, 1025 (N.D.Tex.1988); and *Blakely Airport Joint Venture v. FSLIC*, 678 F.Supp. 154, 155 (N.D.Tex. 1988). In this case, the removal petition was not filed until almost three months after FDIC was appointed receiver of the plaintiff bank. Nor is the Court evaluating constitutional questions that lurk in this case. The Court can base its rulings in favor of Norglass on non-constitutional grounds. *See FDIC v. Sellards*, 731 F.Supp. 1300 (N.D.Tex.1990).

Rulings in favor of Norglass are more appropriately grounded on the circumstance that neither plaintiff nor intervenors timely pursued the only avenues of relief from the July 28, 1988, judgment that potentially were available to one or more of them. To that circumstance is added the unlikelihood that the superpower defenses

---

1.  The court does not mean to imply a belief that the plaintiff and intervenors had any right to use the superpower defenses to impair the judgment in question. This is a point to which attention is devoted in a subsequent part of this opinion. The point here is that, if there was any such right, it could have been exercised a number of different ways prior to or shortly after removal.

have had any legitimate role in this case at any point in time, bearing in mind that the judgment was rendered before the receivership came into being.

When the removal to this court occurred, this action was to be treated as if it had been commenced in this court, i.e., all the things that had occurred in the state court were to be deemed to have occurred in this court. *See In re Meyerland Co.*, 910 F.2d 1257, 1261–1262 (5th Cir.1990); *In re Savers Federal Savings & Loan Association*, 872 F.2d 963 (11th Cir.1989); *Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir.1985). So, the status of the action, once it was removed, was the same as if (i) the state court judgment had been rendered by this court on July 28, 1988, (ii) a motion for new trial had been filed by the plaintiff on August 26, 1988, and had been overruled by this court on September 27, 1988, (iii) the time within which plaintiff and intervenors had for the perfection of an appeal from the judgment to the Fifth Circuit was to expire no later than November 28, 1988, and (iv) plaintiffs and intervenors had available to them the provisions of Fed.R.Civ.P. 60 to whatever extent applicable.

Intervenors rely in their brief in support of their pending motions on the provisions of 12 U.S.C. § 1821(d)(13), but erroneously put emphasis on the (B) part rather than the (A) and (D) parts, which now apply to this action. Title 12 U.S.C. § 1821(d)(13) reads in its entirety as follows:

**(13) Additional rights and duties**

**(A) Prior final adjudication**

The Corporation [FDIC] shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.

**(B) Rights and remedies of conservator or receiver**

In the event of any appealable judgment, the Corporation as conservator or receiver shall—

(i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights; and

(ii) not be required to post any bond in order to pursue such remedies.

**(C) No attachment or execution**

No attachment or execution may issue by any court upon assets in the possession of the receiver.

**(D) Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

NCNB's rights as assignee through FDIC, as receiver, do not rise above those of plaintiff or FDIC.

When the FDIC/First RepublicBank Fort Worth, N.A., receivership relationship came into being on July 29, 1988, a final judgment already had been rendered by a court of competent jurisdiction. The judgment was final in the sense that it decided all issues in the litigation.[2] If timely resort

---

**2.** The meaning of the words "final judgment" is determined by the context in which they are used. *See United States v. Lemaire*, 826 F.2d 387, 388–389 (5th Cir.1987). Presumably the word "final" as used in § 1821(d)(13)(A) refers to finality in the sense that the judgment is dispositive of the issues raised in litigation and not in the sense of unappealability; otherwise, the use of the word "unappealable" would be superfluous. *See United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir.1985). But the distinction is not determinative of this case for the reason, among others mentioned in this opinion, that the judgment, which was rendered by a court of competent jurisdiction before July 29, 1990, without doubt became a final unappealable judgment within a few months thereafter,

had been made to avenues of appellate relief that were available on and after July 29, 1988, § 1821(d)(13)(B) could be applicable. As it is, by failing to perfect an appeal from the judgment, plaintiff and intervenors allowed the judgment, which was rendered by a court of competent jurisdiction before appointment of FDIC as receiver, to become a final unappealable judgment. When that occurred, FDIC became statutorily obligated to abide by the judgment. Indeed, § 1821(d)(13)(D) suggests that, once the judgment became a final unappealable judgment, no court, including this court, had jurisdiction to take any action that would impair the judgment. For the reasons stated in this paragraph, the court should rule that the state court judgment is, and shall remain, unimpaired.

Plaintiff and intervenors are no better off if afforded the right to assert Rule 60 relief. Plaintiff has not moved under Rule 60. Intervenors waited approximately two years after this action was removed to this court, and approximately two years and three months after date of judgment, before requesting Rule 60 relief (or, for that matter, any relief from the judgment other than the post-judgment motion for new trial filed in August 1988).

Intervenors' motions under Rules 56 and 60 are so generally drawn that one has difficulty deciphering the precise basis for the relief that is being sought by the motions. All that is clear from the language of the motions is that intervenors are asking, in effect, that at this late date there be a form of relitigation of this action and that intervenors be permitted to urge in the relitigation legal theories that had no relevance to the case that was tried to the state court jury or the judgment that was entered in July 1988. The Court supposes that the Rule 56 feature of the motions must be intended by intervenors to be a

request for a ruling that intervenors have shown a right to Rule 60 relief as a matter of law.[3]

Since there quite clearly is no contention that a clerical mistake was made in the judgment, the court will assume that intervenors are not urging reliance on the (a) part of Rule 60. Inasmuch as the Rule 60 motion was not filed within one year after the judgment was rendered, the court will assume that intervenors are not urging reliance on reasons (1), (2) and (3) of the (b) part of Rule 60. This leaves reasons (4), (5) and (6), as specified in the (b) part of Rule 60, which, together with other pertinent language of Rule 60, provide as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, ...

There is more than one reason why, even if the court were thought to have authority to consider a grant of Rule 60 relief at this time, the relief sought by intervenors should be denied.

First, as a matter of law, plaintiff's motion was not made within a reasonable time. No meaningful justification is given by intervenors for the two year and three month delay in filing the motion, nor can there be any plausible justification for such a delay.[4] The delay is sufficient reason for denying intervenors' motions.

almost two years before intervenors sought relief from the judgment.

3. The suggestion is made at page 4 of a brief intervenors filed November 30, 1990, that the goal of intervenors is to gain a summary ruling that they are entitled to Rule 60(b)(6) relief.

4. The argument made by intervenors on page 12 of their November 30, 1990, brief that their Rule

60 motion was timely because it was filed "within the time frames established by this Court in its Scheduling Order dated March 1, 1990 and the Local Rules for the Northern District of Texas requiring all motions to be filed forty-five days before trial" is viewed by the court to be frivolous. It misstates the content of the March 1, 1990, order and the Local Rules, and it would be a nonsensical application of the order and

Moreover, if the unreasonable delay were to be overlooked and one were to consider the merit of the motion in the light of reasons (4), (5) and (6), the same result would ensue. There is no contention that the judgment is void; therefore, reason (4) cannot, in any event, provide basis for relief. Nor is there any contention that any of the parts of reason (5) should be held applicable—there is no contention that the judgment has been satisfied, released or discharged or that a prior judgment upon which it is based has been reversed or otherwise vacated, nor is the contention made that there is an equitable reason why the judgment should not have prospective application. Turning to reason (6), the court is of the opinion that there is absolutely no reason justifying relief from the operation of the judgment. The judgment was rendered fair and square, after full development of the law and facts and at a time when the plaintiff was represented by competent attorneys. It was properly based on the facts and then applicable law. There is not the slightest hint of any irregularity or unfairness in the proceedings from which the judgment resulted. This is a far cry from a default judgment case. The judgment in question was the product of a fair trial between plaintiff and Norglass; and, plaintiff and intervenors had an opportunity to perfect an appeal from the judgment, but failed to do so. In *Northshore Development, Inc. v. Lee*, 835 F.2d 580, 582 (5th Cir.1988), another case in which the agency chose not to perfect an appeal, the Fifth Circuit explained:

> ... a district court should grant a motion under section 6 of Rule 60(b) only to accomplish justice or in extraordinary circumstances.

Applying the "only to accomplish justice or in extraordinary circumstances" standard here, the court notes that intervenors have suggested no reason whatsoever why the judgment should be set aside other than to allow the assertion of legal theories that, at the time the judgment was rendered, were not available to the plaintiff. Indeed, they had no applicability to the rules even if they said what intervenors represented.

case at the time of or before rendition of the judgment. The record of this case makes apparent that justice is best accomplished by denial of Rule 60 relief rather than by grant of relief. A grave injustice would be wrought if Norglass were to be deprived at this point in time of the hard fought victory it fairly gained in the state court, undoubtedly at considerable legal expense. Norglass already has been requested to incur too much additional legal expense at the hands of FDIC and NCNB since the judgment was rendered, and time is come to put the litigation and attendant legal expense to an end. There is no intervening equity that would make failure to grant Rule 60(b)(6) relief inequitable. The desire of intervenors to cause a post-judgment victimization of Norglass with "superpower defenses" certainly does not present such an equity. So lacking in equity is the position of intervenors that the court questions their good faith in filing and urging their motions. In sum, there is not the slightest reason why the finality of the July 28, 1988, judgment should bow to intervenors' Rule 60 assault.

Furthermore, if intervenors were to be given the benefit of the doubt on the question of whether the superpower defenses could ever be asserted once the judgment was rendered, the conclusion would follow that they should have been asserted by point of error on appeal. As it is, the request by intervenors for Rule 60(b)(6) relief is tantamount to a plea that the court allow them to raise and pursue through the medium of Rule 60 legal theories that, on the assumption expressed above, could and should have been urged on appeal. Ordinarily, grant of relief under Rule 60(b)(6) is improper if the same relief could have reasonably been sought by means of appeal. *See Martinez–McBean v. Government of Virgin Islands*, 562 F.2d 908, 911 (3rd Cir. 1977). Intervenors do not suggest any reason why this general rule should not be followed in this case. Plaintiff and intervenors had time within which to perfect an appeal from the judgment, but elected not to do so. Therefore, they should not now sented.

be permitted to complain through Rule 60(b)(6) of the same things that could have been the subject matter of complaint on such an appeal.

E. *The decisions of the Fifth Circuit that Establish that the Superpower Defenses are not Available Post–Judgment in any Event:*

In *Thurman v. FDIC,* 889 F.2d 1441 (5th Cir.1989), the Federal Savings and Loan Insurance Corporation ("FSLIC") sought to intervene for the purpose of asserting superpower defenses post-judgment through the medium of a Rule 60(b) motion. The court rejected FSLIC's Rule 60(b) contention, and, in the course of doing so, explained:

> Where the party asserting new defenses is a post-judgment intervenor, and the newly proffered defense would not have changed the outcome of the case as it was tried, there is little to justify the upset of the judgment. In this weighing of interests we do no violence to the policies behind *D'Oench, Duhme.* The parties to the suit at trial were the parties to the transaction. The difficulties attending a receiver's finding that notes in the case are subject to unrecorded agreements were absent. *See Grubb v. Federal Deposit Ins. Corp.,* 868 F.2d 1151, 1159 (10th Cir.1989).... [W]hen final judgment was rendered below, five days before the receivership was created, no party to the case could have asserted these defenses. Accordingly, we affirm the district court's refusal to allow FSLIC Corporate to intervene to assert its new and unique defenses.

*Id.* at 1447. As is so in the instant case, the judgment in *Thurman* was rendered before the receivership was created. The court allowed the requested intervention but disallowed assertion by FSLIC of the federal defenses, unique to its federal status (superpower defenses).

The Fifth Circuit reached basically the same result in *Olney Savings & Loan Association v. Trinity Banc Savings Association,* 885 F.2d 266 (5th Cir.1989). In *Olney,* FSLIC sought to intervene in an action on appeal from a district court's judg-

ment against Trinity Banc Savings Association ("Trinity") and others. FSLIC was appointed conservator for Trinity after the judgment was rendered, and it intervened in the appeal of the judgment to the Fifth Circuit, where it asserted superpower defenses that were not available to Trinity at trial. The court denied FSLIC the right to assert the federal defenses, giving two reasons for its ruling. First, the defenses were not available post-judgment to preserve an asset of Trinity because an effect of the judgment was to cause there no longer to be an asset to be preserved. Second, as the court explained:

> Further, because a final judgment existed when FSLIC entered as conservator, the purposes of *D'Oench* and § 1823(e) will not be impaired. One purpose is to prevent "fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley* [*v. Federal Deposit Insurance Corp.,* 484 U.S. 86], 108 S.Ct. [396] at 401 [98 L.Ed.2d 340 (1987)]. Here, as in *Grubb,* 868 F.2d at 1159, "collusion between [the parties] seems highly unlikely because the parties had fully and heatedly litigated the ... issue to judgment before the bank failed."

*Id.* at 275.

FSLIC argued in *Olney* that under § 212 of the then newly-enacted Financial Institutions Reform, Recovery and Enforcement Act of 1989 it was entitled to raise 12 U.S.C. § 1823(e) on appeal. The part of § 212 upon which FSLIC relied is 12 U.S.C. § 1821(d)(13)(B), upon which intervenors rely in the instant case. The Fifth Circuit rejected this argument with the following explanation:

> FSLIC argues that this new provision allows conservators to raise § 1823(e) on appeal for the first time, after the entry of a final judgment to which they were not a party. We read the same section, and find that it means that conservators and receivers are given standing to pursue all appeals, where before its enactment only FDIC acting in its corporate capacity could pursue certain claims. This section gives FSLIC no new substantive rights in this appeal.

885 F.2d at 275. In conclusion, the *Olney* court said:

> Because FSLIC took over as conservator at a time when judgment had been entered by the district court, and the Participation Agreement was thereby rendered void, FSLIC had no greater rights in this appeal than Trinity and STM would have.

*Id.* at 276.

For the reasons given in *Thurman* and *Olney*, intervenors would not have had the right to raise the superpower defenses on appeal from the July 28, 1988, judgment if they had elected to perfect an appeal from the judgment. Much less do they have the right to raise those defenses now that the judgment is a final unappealable one.[5]

## ORDER

For the reasons given in the foregoing memorandum opinion:

The Court ORDERS, ADJUDGES, DE-CREES and DECLARES that:

(a) The motions of FDIC and NCNB for relief from judgment and for summary judgment (filed October 18, 1990, under the title "Plaintiffs' Motion for Relief from Judgment and Motion for Summary Judgment") should be, and they are hereby, denied.

(b) Norglass's motion for summary judgment should be, and it is hereby, granted.

(c) The July 28, 1988, judgment rendered in this action, while it was pending in the state court, is the final judgment in this action, and such judgment is now unappealable.

(d) Plaintiff, FDIC and NCNB should be, and they are hereby, denied any relief from such judgment.

---

[5] The court does not consider that there is a need to discuss the recent opinions of the Court of Appeals of Texas, Dallas, upon which intervenors place reliance. We are referring to cases such as *FDIC v. Larsen*, 793 S.W.2d 37 (Tex.App. —Dallas 1990, writ granted) and *FSLIC v. Stone*, 787 S.W.2d 475 (Tex.App.—Dallas 1990, writ granted). For the most part, the opinions in those cases are devoid of sound reasoning. The court prefers to accept and follow the Fifth Circuit decisions mentioned in this opinion.