**Kenneth B. BEACH, Appellant**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for American Savings & Loan Association of Brazoria County, Texas, Appellee.**

No. 01–90–00855–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 19, 1991.

Rehearing Denied Oct. 17, 1991.

Callan M. Billingsley, Angleton, for appellant.

James H. Hada, Trial Counsel, Katherine McIlroy, Shoebotham, P. Alan Sanders, Tyler & Pearson, P.C., Appellate Counsel, Houston, for appellee.

Before COHEN, MIRABAL and HUGHES, JJ.

## OPINION

COHEN, Justice.

The primary issue before us is whether the Resolution Trust Corporation may assert on appeal for the first time that it is the holder in due course of a judgment and thus avoid its predecessor's burden to prove that collateral was disposed of in a commercially reasonable manner. We hold that the holder in due course doctrine does not apply to judgments, and that the Resolution Trust Corporation cannot assert that doctrine on appeal for the first time.

This is an appeal from a deficiency judgment for $36,797.11 in favor of the Resolution Trust Corporation ("RTC"), as receiver for American Savings & Loan Association of Brazoria County, Texas ("American"), against Kenneth B. Beach ("Beach"). In 1983, Beach, Frank Lima, and A.J. Whipple, Jr. signed a wraparound promissory note for $298,000 payable to American.

The wraparound note included as part of its principal an underlying note for $155,000 executed in 1978 by Beach, payable to Jack Chapman ("the Chapman note"), which was secured by a first lien on 90 acres of land. The wraparound note was secured by a second lien on the same land and by a $112,500 promissory note payable to Lima ("the Lima note").

The makers defaulted, and American purchased the collateral on foreclosure. American bid $200,000 for the 90 acres and $20,000 for the Lima note. American credited $220,000 toward the balance of its $298,000 note. American settled with Lima and won a deficiency judgment against Whipple and Beach. Whipple has not appealed. The RTC first entered this lawsuit by substituting for American in December 1990, after the judgment for American was signed in August 1990.

Beach contends in his first point of error that there was no deficiency on the note to American.

The underlying Chapman note had a balance of $111,414.37 when American foreclosed on its note. American's note had a balance then of $257,882.74. Beach contends that because American admitted at trial that it did not pay Chapman any of the foreclosure sale proceeds, his true debt to American was only the difference between the balances of the "wraparound" (American) note and the underlying (Chapman) note, or $146,468.37 (257,882.74 − 111,-414.37 = $146,468.37). Because the foreclosure sale proceeds totalled $220,000, Beach contends there was no deficiency.

■ Beach calculates his debt according to the "true debt" method. *See Summers v. Consol. Capital Special Trust*, 783 S.W.2d 580, 582 (Tex.1989). The *Summers* court rejected the "true debt" approach and adopted the "outstanding balance" method of calculating the amount due on a

wraparound note. *Id.* at 583. Under that method, when a wraparound note lien is foreclosed, the foreclosure sale proceeds are credited against the *entire* outstanding balance due. If the balance on the wraparound note exceeds the foreclosure sale proceeds, a deficiency results. *Id.* Under that method, there was a deficiency here.[1]

We overrule point of error one.

Beach contends in his fourth point of error there is no evidence he was given notice of the disposition of the personal property collateral, i.e., the Lima note, and there is no evidence the sale of the Lima note was commercially reasonable. Beach claims that lack of notice and commercial reasonableness preclude a judgment for the deficiency.

■ To recover a deficiency, a creditor must prove he sold the collateral in a commercially reasonable manner after notice to the debtor. *Tanenbaum v. Economics Lab., Inc.*, 628 S.W.2d 769, 771 (Tex.1982); *M.P. Crum Co. v. First Southwest Sav. & Loan Ass'n*, 704 S.W.2d 925, 926 (Tex. App.—Tyler 1986, no writ). This Court has held that if the debtor pleads lack of commercial reasonableness in a deficiency action, the burden is on the creditor to prove the commercial reasonableness of the sale. *Greathouse v. Charter Nat'l Bank*, 795 S.W.2d 1, 2–3 (Tex.App.—Houston [1st Dist.] 1990, writ granted); *see also Smith v. Federal Deposit Ins. Corp.*, 800 S.W.2d 648, 649 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd). Other courts have held the burden is *initially* on the creditor to plead and prove a commercially reasonable sale was conducted. *See Chase Commercial Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 364 (Tex.App.—Dallas 1989, no writ); *Hall v. Crocker Equip. Leasing*, 737 S.W.2d 1, 3 (Tex.App.—Houston [14th Dist.] 1987, writ denied).

---

1. There are some factual differences between this case and *Summers*. First, the wraparound note debtor, Beach, did not use the proceeds of American's loan to buy the land. He owned it before he borrowed from American. Second, Beach is responsible for the underlying indebtedness. Moreover, the RTC conceded at oral argument that American does not own or hold the underlying "Chapman" note, contrary to statements in the RTC's brief. According to the RTC's counsel at oral argument, American took the land purchased at foreclosure "subject to" the Chapman note lien. In his brief, Beach does not rely on these differences or contend that they call for a different result; therefore, we do not reach that issue.

Beach pled American failed to dispose of the Lima note in a commercially reasonable manner, and American offered no proof of notice or that the sale was commercially reasonable. Consequently, we hold American failed to prove its entitlement to a deficiency judgment.

Next, we must decide whether Beach can assert this error against the RTC, American's successor in interest to this judgment.

When acting as a receiver, the RTC is a federal agency like the FDIC. 12 U.S.C.A. § 1441(b)(1)(B) (West Supp.1990). The RTC urges that, as a receiver of an insolvent bank, it can assert new federal law defenses for the first time on appeal, even though it became a receiver after judgment was rendered in the trial court. Specifically, the RTC claims the federal holder in due course doctrine applies when it becomes a holder of a negotiable instrument previously owned by the failed thrift and thus, it holds the note free from the notice and commercial reasonableness defenses of Beach.

We disagree with the RTC's contentions for several reasons. First, the RTC is neither the holder nor the holder in due course of a negotiable instrument. When the RTC acquired American's assets, it acquired a judgment, not a negotiable instrument. A state court judgment is not a negotiable instrument. TEX.BUS. & COM. CODE ANN. § 3.104 (Vernon 1968). Nor did the RTC take a negotiable instrument without notice that it was overdue or had been dishonored. TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). Obviously, the RTC knew the note had been dishonored and was overdue; otherwise, there could not have been a deficiency judgment. There is no such thing as a holder in due course of a judgment.

Nor do we agree that the RTC can assert its holder in due course defense on appeal for the first time. We recognize that the Dallas Court of Appeals has allowed the federal banking agencies to assert such defenses for the first time on appeal. *Federal Deposit Ins. Corp. v. F & A Equipment Leasing*, 800 S.W.2d 231 (Tex.App.—Dallas 1990, writ filed); *FDIC/Manager Fund v. Larsen*, 793 S.W.2d 37, 42–43 (Tex.App.—Dallas 1990, writ granted); *Federal Deposit Ins. Corp. v. Zoubi*, 792 S.W.2d 825, 827 (Tex.App.—Dallas 1990, no writ); *FSLIC v. T.F. Stone—Liberty Land Assoc.*, 787 S.W.2d 475, 479 (Tex.App.—Dallas 1990, writ granted). Curiously, that court has been more generous to federal agencies in this respect than have the federal courts in this circuit. The Fifth Circuit has twice unanimously refused to allow new federal defenses to be raised on appeal for the first time. *Thurman v. Federal Deposit Ins. Corp.* 889 F.2d 1441, 1446–47 (5th Cir.1989) (policy underlying *D'Oench, Duhme* doctrine would not be served and result would be unjust); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274–75 (5th Cir.1989) (*D'Oench, Duhme* doctrine purposes would not be served, and 12 U.S.C. § 1821(d)(13)(b) (FIRREA) gives no new substantive rights on appeal.); *First RepublicBank Fort Worth v. Norglass, Inc.*, 751 F.Supp. 1224, 1231–32 (N.D.Tex.1990) (criticizing the opinions in *Larsen* and *Stone* as "devoid of sound reasoning"). The rule followed in the Dallas court is under scrutiny by the Texas Supreme Court. Given the unsettled state of the law, we elect to follow the federal authorities, both because of their expertise in the application of federal law and because they have reached a fairer result. We are reluctant to affirm a judgment we would otherwise reverse on the basis of a defense not asserted by a party not present at trial. *D'Oench, Duhme* and federal statutes protect the government from secret agreements, but there are none in this case. Here, it is the debtor who needs protection from secret defenses first asserted by the RTC at a time when the debtor has no opportunity to respond.

American had the burden to prove commercial reasonableness. It admittedly failed to do so. Based on *Olney* and *Thurman*, we hold that the RTC may not raise on appeal the new defense that it is the holder in due course of a judgment.

We sustain point of error four.

The RTC requests that we remand "in the interest of justice," if we reverse the judgment. Justice does not require that the RTC receive a new trial to prove what American had the burden and the opportunity to prove at the first trial. When we find that a party has won a judgment even though it produced no evidence of an element of its cause of action, our normal remedy is to reverse and render. Nothing suggests that remedy is inappropriate here.

Beach waived point of error three during oral argument. We need not reach point of error two, given our decision to sustain point four.

The judgment is reversed, and judgment is rendered that the RTC take nothing.

MIRABAL, Justice, concurring.

I concur.

In a wraparound note transaction, the debtor signs a note that includes, or "wraps around," the principal balance of an underlying indebtedness. In most cases, the debtor expressly does not assume responsibility for the underlying indebtedness. In the present case, however, Beach, the wraparound note debtor, *is* responsible for the underlying indebtedness, the Chapman note that was "wrapped" around.

The Chapman note was secured by a lien on 90 acres. When Beach, along with two other men (the "Beach group"), subsequently borrowed money from American, and American wanted a lien on the same 90 acres, the Beach group did not simply sign a note to American for the amount they borrowed from American, secured by a second lien deed of trust on the 90 acres; rather, the Beach group signed a note in the combined principal amount of the sum borrowed from American *plus* the principal balance of the Chapman note. Beach signed a deed of trust granting American a lien on the 90 acres to secure the combined principal amount represented by the wraparound note.

When American foreclosed on its deed of trust, it was the highest bidder with its bid of $200,000, and American received title to the 90 acres through a substitute trustee's deed. American took title "subject to" the Chapman first lien; American has not "assumed" the Chapman note.

Beach urges us to apply the "true debt" approach in determining whether a deficiency existed after American's foreclosure. Beach is concerned that American has not paid Chapman any of the foreclosure sale proceeds. Beach believes American does not intend to pay Chapman the first lien note balance, even though American now owns the land and intends to collect the deficiency, in cash from the Beach group, based on the "outstanding balance" approach. Beach fears, under the "outstanding balance" formula, he will pay American a deficiency based on the "combined" amount owed under the wraparound note (which includes the Chapman balance), yet Beach remains directly liable to the Chapmans, separately, for the balance due on their note. Beach is concerned he will have to pay twice for the same debt.

I agree with the majority that, even though this case does not present the typical wraparound mortgage arrangement, the "outstanding balance" method of calculating the amount of the deficiency after foreclosure is the proper method to apply. I reach this conclusion because the law implies a covenant into the parties' agreement requiring the trustee under the deed of trust to apply the foreclosure sale proceeds first to the satisfaction of the pre-existing debt, the Chapman note, before making any distribution to American. *Summers v. Consol. Capital Special Trust*, 783 S.W.2d 580, 583 (Tex.1989). Although Beach is concerned that American has not paid Chapman any of the foreclosure sale proceeds, Beach did not plead, as an affirmative defense or as a counterclaim, that American, through its trustee, has breached its covenant to satisfy the Chapman debt; therefore, this issue was not before the trial court. It is clear under *Summers* that American's right to a deficiency judgment under the "outstanding balance" method is tied to its corresponding duty to apply the foreclosure sale proceeds, and other amounts collected, to the satisfaction of the full wraparound note debt, which includes the balance owing on

the Chapman note. If American collects the deficiency, based on the "outstanding balance" formula, and yet breaches its duty to satisfy the Chapman note, Beach will have a cause of action for appropriate damages.

I agree with the overruling of point of error one.

Beach contends in his second point of error that there was no evidence the 90 acres was foreclosed upon in accordance with the notice requirements of the deed of trust and of TEX.PROP.CODE ANN. § 51.002 (Vernon Supp.1991). The majority opinion considers it unnecessary to reach point of error two, and therefore, declines to do so. I would sustain point of error two.

American sought, and obtained, a deficiency judgment based on the formula applicable to the determination of a deficiency after a *valid* foreclosure sale, to wit: the note balance at the time of foreclosure *minus* the amount received at the foreclosure sale *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475–76 (Tex. 1965); *Maupin v. Chaney*, 139 Tex. 426, 430–33, 163 S.W.2d 380, 382–84 (1942). American had the burden to prove, as an essential element of its cause of action, that the foreclosure sale was *valid*, i.e., that it was conducted in accordance with the terms of the deed of trust and the laws of Texas. *Williams v. Henderson*, 580 S.W.2d 37, 39 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *see also W. Dorsaneo, L. Knippa & B. Bentley*, 11 TEXAS LITIGATION GUIDE § 255.101 (1991). Beach specifically pled in his first amended answer that American failed to dispose of the secured real estate in accordance with the terms of the deed of trust and applicable state law, so American was on clear notice that Beach contested American's ability to prove this essential element of its cause of action.

The trial court's findings of fact include a finding that the secured real property was foreclosed on in accordance with the terms of the deed of trust.

In reviewing a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding of the trial court, and we disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex. 1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 663, 244 S.W.2d 660, 661 (1951).

At trial, American presented one witness, its senior vice-president, who identified the note, the deed of trust, and the security agreement, and testified to the fact of default, the fact there were foreclosure sales of the real estate and the collateral note, and that American was the highest bidder at each sale. American's witness additionally testified about the amount due under the note at the time of foreclosure, and the credit applied as a result of the foreclosure sales. American presented *no* evidence describing the conduct of the foreclosure sales, and *no* evidence about the posting and sending of notices about the sales. The substitute trustee's deed was not admitted into evidence.[1]

I would hold American failed to produce any evidence showing the real estate foreclosure sale was valid. Therefore, I would hold American did not prove its entitlement to a deficiency judgment based on the difference between the note balance and the bid price at foreclosure.[2]

I would sustain Beach's point of error two.

I concur in the balance of the majority opinion, including the order of reversal and rendition.

---

1. As in *Koehler v. Pioneer American Insurance Co.*, 425 S.W.2d 889, 892 (Tex.Civ.App.—Fort Worth 1968, no writ), the substitute trustee's deed's introduction into evidence would have provided prima facie proof that all prerequisites for the real estate foreclosure sale had been complied with.

2. Of course, American could be entitled to a deficiency judgment even if the foreclosure sale was *invalid;* however, a different formula would apply to compute the deficiency. *See Lucky Homes*, 390 S.W.2d at 475; *Maupin*, 139 Tex at 430–33, 163 S.W.2d at 382–84.