**BAILEY, VAUGHT, ROBERTSON AND COMPANY, Appellant,**

v.

**REMINGTON INVESTMENTS, INC., Appellee.**

No. 05–93–00911–CV.

Court of Appeals of Texas, Dallas.

Sept. 27, 1994.

---

William E. Bailey, Dallas, for appellant.

Leslie K. Kalmbach, Bruce H. Clark, Austin, for appellee.

Before MALONEY, OVARD and BURNETT, JJ.

## OPINION

OVARD, Justice.

Bailey, Vaught, Robinson and Company (BVR) appeals a judgment in favor of Remington Investments, Inc. (Remington) in this suit on a promissory note. In three points of error, BVR contends the trial court erred in (1) holding that Remington was a holder in due course, (2) granting Remington's motion for summary judgment and ordering that BVR take nothing on its counterclaims, and (3) denying BVR's motion for continuance. We affirm in part and reverse and remand in part.

### 1. Background Facts and Procedural History

On January 11, 1989, William Bailey and William Vaught, members of the executive committee of BVR, signed a variable interest

rate note in the amount of $34,000 (the note) in favor of Forestwood National Bank (Forestwood). On September 31, 1989, Forestwood was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) took possession of the note. On November 15, 1989, BVR wrote to the FDIC asking about the location of a certificate of deposit purchased by BVR. It also notified the FDIC that BVR would no longer make payments on the note until it obtained the information. The note matured on April 11, 1990. On October 12, 1991, Remington purchased the matured note from the FDIC by bill of sale. On November 25, 1991, Remington filed suit on the note.

BVR defended against Remington's suit on the note by pleading general and verified denials, denial of genuine endorsement, ambiguity, usury, and setoff. BVR also alleged five counterclaims, including a counterclaim for usury.

Remington moved for summary judgment and alleged (1) it is the owner and holder of the note, and (2) the note was in default and the sum due after all offsets and credits was $13,633.45 plus interest of $7,555.57. Remington also said in the motion that it moved for summary judgment on BVR's counterclaims.

In his affidavit, David Owen, a vice president at Remington, said Remington purchased the note from the FDIC and is an owner and holder of the note. He said BVR is in default and refused to pay the $13,-633.45 due on the note on September 12, 1991. He said:

> [When Remington purchased the note], interest was accruing under the terms of the note at the post-maturity rate of 18% ($6.73 per day). [Remington] has continued to calculate the interest due according

to this post-maturity rate as provided in the note. As of January 8, 1993, the interest due under the note described in Exhibit "A" is $7,555.57, with interest thereafter accruing according to the terms of the note. [Remington] has never demanded more than the interest rate allowed by the note.

Remington attached a portion of BVR partner William Bailey's deposition to the affidavit. Bailey did not dispute that Remington owns the note. He said BVR disputed the interest rate charged by the FDIC because after the lender, Forestwood, failed, there was no published "lender's prime" rate to use to calculate interest. The interest rate stated on the note was "lender's prime" plus one percent.

The trial court granted Remington's motion for summary judgment and signed a judgment in favor of Remington in the amount of $13,633.45 in principal and $8254.45 in interest. The trial court did not state on what ground it granted summary judgment.[1]

On appeal, BVR contends the trial court erred in granting summary judgment in favor of Remington both on Remington's suit on the note and on BVR's counterclaims. Remington contends it was entitled to judgment based on the federal holder-in-due-course doctrine and the *D'Oench*[2] doctrine, and that no genuine issue of material fact remained.

## 2. Applicable Law

### A. Standard of Review— Summary Judgment

This Court will affirm a summary judgment only if the record establishes that the movant has conclusively proved all essen-

---

1. The trial court signed the judgment on April 23, 1993. The trial court later signed another amended judgment. Because the second judgment was signed when the trial court did not have plenary power, the second judgment is a nullity. *See* Tex.R.Civ.P. 329b. In the April 23 judgment, the trial court said it considered the summary judgment motion, found no genuine issues of material fact, and that Remington was entitled to judgment. It also dismissed BVR's counterclaims. We construe the judgment as granting summary judgment in Remington's fa-

vor on Remington's suit on the note and also on BVR's counterclaims.

2. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The doctrine prevents an obligor from asserting as a defense to a collection suit by the FDIC an oral side agreement with the failed depository institution that alters the terms of a facially unqualified note.

tial elements of its cause of action or defense as a matter of law. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); Tex.R.Civ.P. 166a(c). The movant has the burden of proof to show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300–01 (Tex.1990). We take as true evidence favorable to the nonmovant when deciding whether a material fact issue exists. *Id.* Further, we indulge all reasonable inferences and resolve any doubts in the nonmovant's favor. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

■ Under rule 166a(c) of the Texas Rules of Civil Procedure, a motion for summary judgment must "state the specific grounds therefor." The trial court is to render judgment if "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

## B. Negotiable Instruments—Sum Certain Requirement

■ Article Three of the Texas Business and Commerce Code sets out the requisites for the negotiability of an instrument. *See* Tex.Bus. & Com.Code Ann. § 3.104 (Tex. UCC) (Vernon 1968); *Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). A negotiable instrument, such as a note, is a writing signed by the maker, containing an "unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer." *See* Tex.Bus. & Com.Code Ann. § 3.104. A variable-rate promissory note with an interest rate that is determined by reference to a bank's published prime rate is a promise to pay a sum certain and, if it meets the other requirements of negotiability, is a negotiable instrument. *See* Tex.Bus. & Com.Code Ann. § 3.104; *Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 797 (Tex.1992). However, the term "bank's published prime rate" includes "only those rates which are public, either known to or readily ascertainable by any interested person." *Amberboy*, 831 S.W.2d at 797–98.

■ One reason for the "sum certain" requirement is to provide "commercial certainty" in the transfer of negotiable instruments. *See Amberboy*, 831 S.W.2d at 796. Commercial certainty serves one of the purposes of the law of negotiable instruments: to make negotiable instruments the functional equivalent of money. *See id.*

## C. Holders in Due Course—Texas Law

To meet the technical requirements of Texas law for holder-in-due-course status, a holder of a negotiable instrument must (1) take the instrument for value, (2) in good faith, and (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Tex.Bus. & Com.Code Ann. § 3.302(a) (Tex.UCC) (Vernon 1968). If the holder acquires the instrument with notice that it is past due, the holder is not a holder in due course. *See* Tex.Bus. & Com.Code Ann. § 3.302(a)(3) (Tex.UCC) (Vernon 1968).

## D. Federal Holder–in–Due–Course Doctrine

■ The FDIC and its successors may be holders in due course under federal common law without meeting the technical state-law requirements for holder-in-due-course status. *See NCNB Tex. Nat'l Bank v. Campise*, 788 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1990, writ denied). The federal holder-in-due-course doctrine bars makers of *negotiable instruments* from asserting personal defenses to liability against the FDIC where the FDIC acquires the instrument by purchase and assumption from a troubled financial institution. *See FDIC v. Byrne*, 736 F.Supp. 727, 730 (N.D.Tex.1990); *Beach v. RTC*, 821 S.W.2d 241, 244 (Tex. App.—Houston [1st Dist.] 1991, no writ). The federal holder-in-due-course doctrine also precludes assertion of personal defenses against a transferee of the FDIC that acquires a negotiable instrument for value, in good faith, and without notice of any defense. *See Byrne*, 736 F.Supp. at 730. The federal holder-in-due-course doctrine does not apply regarding nonnegotiable instruments. *See*

*Sunbelt Savings, FSB v. Montross,* 923 F.2d 353, 356 (5th Cir.1991), *opinion reinstated in part,* 944 F.2d 227, 228 (1991) (en banc); *Stiles v. RTC,* 831 S.W.2d 24, 27 (Tex.App.—Dallas 1992), *rev'd on other grounds,* 867 S.W.2d 24, 26 (Tex.1993); *cf. Beach,* 821 S.W.2d at 244 (doctrine did not apply to judgment transferred from FDIC).

### E. Contract Construction

 Generally, the material terms of a contract to loan money include the amount to be loaned and the interest rate. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992). Courts generally will not redraft the terms of a contract while professing to construe it. *Phillips v. Union Bankers Ins. Co.,* 812 S.W.2d 616, 619 (Tex.App.—Dallas 1991, no writ). Courts hold that the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985). Courts will imply provisions in contracts only on grounds of necessity. Courts may imply a contractual provision if it is indispensable to effectuate the intent of the parties. *See Snyder v. Eanes Indep. Sch. Dist.,* 860 S.W.2d 692, 696–97 (Tex.App.—Austin 1993, writ denied).

### F. Elements—Breach of Contract

 The elements of breach of contract are: (1) proof of the contract, (2) compliance with its terms, and (3) breach of the contract. *See Stegman v. Chavers,* 704 S.W.2d 793, 795 (Tex.App.—Dallas 1985, no writ).

### 3. Discussion

### A. Remington's Suit on the Note

#### (1) Applicable Facts

From the summary-judgment evidence, it is apparent that Remington included in its interest calculations for the note prematurity interest for the period from September 1989,

when the FDIC obtained the note, to April 1990 when the note matured while still in the FDIC's possession.[3]

#### (2) BVR's Contention

In its first point of error, BVR contends Remington failed to prove the amount due on the note because there was no way to calculate the prematurity interest. The prematurity interest under the note was based on the "lender's prime rate." Because of Forestwood's failure, there was no Forestwood prime rate to use to calculate interest. In its second point of error, BVR contends the trial court erred in granting summary judgment for Remington because genuine issues of material fact remained.

Regarding the applicable prematurity interest rate, BVR first contends the federal permissible rate applies to supply the rate of interest on the note. *See* 12 U.S.C. § 85. BVR alternatively contends the proper rate of interest is one percent. BVR bases this assertion on the fact that the rate stated in the note is "lender's prime plus one percent." BVR asserts that, because there is no "lender's prime," a rate of one percent applies. BVR also asserts that a six percent rate of interest applies under article 5069–1.03 of the Texas Revised Civil Statutes.

#### (3) Remington's Contention

Remington contends the trial court properly granted summary judgment because Remington established the elements of its cause of action as a matter of law. It contends the trial court could calculate the amount due on the note based on the summary-judgment evidence. Remington contends that the judgment reflects the correct amount of prejudgment and postjudgment interest.

#### (4) Application of the Law to the Facts

 We first consider whether the summary-judgment evidence establishes that Remington conclusively proved all of the essential elements of its suit on the note as a

---

**3.** If postmaturity interest on the principal amount of $13,633.45 accrued at the rate of 18 percent from the maturity date of April 11, 1990 until January 8, 1993, the postmaturity interest alone would total $6733.44. Remington said in

its affidavit that all accrued interest as of January 8 was $7555.57. Therefore, the difference between these sums was prematurity interest. The trial court awarded interest based on Remington's calculations.

matter of law. *City of Houston,* 589 S.W.2d at 678. To recover on the note, Remington had to establish the amount due on the note. *See Stegman,* 704 S.W.2d at 795. In order to decide the issue of the amount due on the note, we must determine what rate of interest applied from September 1989 to April 1990 when there was no "lender's prime rate." The note did not specify an alternative prematurity interest rate to apply if no prime rate existed.[4]

The parties agreed upon a specified rate of prematurity interest for the note. Therefore, article 5069–1.03 does not apply to supply the rate of interest. *See* Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (Vernon 1987) (applies when "no specified rate of interest is agreed upon by the parties"); *FDIC v. Massingill,* 24 F.3d 768, 780 (5th Cir.1994); *FDIC v. Blanton,* 918 F.2d 524, 532 (5th Cir.1990).[5]

The federal permissible rate is also not specifically applicable to this situation. It merely sets forth the highest rate that a national bank may charge. *See* 12 U.S.C. § 85.

In three federal cases involving similar facts, the courts held that courts should substitute a reasonable rate of interest to calculate the amount due on a note where the interest rate is based on the no-longer-published prime rate of a failed financial institution.[6] *See Massingill,* 24 F.3d at 781; *FDIC v. Cage,* 810 F.Supp. 745, 747 (S.D.Miss. 1993); *see also Blanton,* 918 F.2d at 533 (citing *Petroscience Corp. v. Diamond Geophysical, Inc.,* 684 S.W.2d 668, 668–69 (Tex. 1984), which discusses "reasonableness" and interest rates). In *Massingill,* the court held that it is reasonable to substitute the prime rate of the bank that assumed the note as a basis for the applicable interest rate on such notes. *See Massingill,* 24 F.3d at 781; *see also FDIC v. La Rambla Shopping Ctr., Inc.,*

791 F.2d 215, 223 (1st Cir.1986) (court substituted the rate of another bank where there was evidence in the record that the prime rate of failed bank was same as prime rate of other bank); *FDIC v. Condo Group Apts.,* 812 F.Supp. 694, 699 (N.D.Tex.1992).

There are no Texas cases directly on point on the issue of what prematurity interest rate applies in this situation. One case involving postmaturity interest rates may be applied by analogy. In *Petroscience,* the plaintiff sued Petroscience on a note that did not contain a postmaturity interest rate. The Texas Supreme Court said Texas law implies that postmaturity interest is payable on promissory notes even where the terms of the note do not state a postmaturity interest rate. Under Texas law, if no postmaturity interest rate is specifically stated, the prematurity interest rate continues after maturity. *See Petroscience,* 684 S.W.2d at 668–69. The court held this was consistent with "the Texas policy of giving a reasonable construction to a note that avoids usury." *See id.* at 669.

■ We hold that, in order to calculate the amount due on a promissory note where the prematurity interest rate is based on the no-longer-published prime rate of a defunct financial institution, the trier of fact should apply a "reasonable" rate of interest, considering the facts of each case. *See Blanton,* 918 F.2d at 553; *Cf. Petroscience,* 684 S.W.2d at 668–69. Here, the parties agreed in the note that prematurity interest is payable on the note. Therefore, it is proper to imply a contract term to effectuate the intent of the parties. *See Snyder,* 860 S.W.2d at 696. This holding is in keeping with the Texas policy of giving a reasonable construction to promissory notes regarding interest. *Cf. Petroscience,* 684 S.W.2d at 668–69.

The trier of fact should determine what

4. The contract provided that the maximum lawful rate determined under Texas law was the quarterly rate ceiling "specified in article 5069–1.04 V.A.T.S."

5. *But see Ocean Transport, Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 264 (Tex.App.—Corpus Christi 1994, n.w.h.) (if interest is not "calculable" from

the note's terms, article 5069–1.03 applies) (dicta).

6. We note that *Blanton, Cage,* and *Massingill* did not involve the issue of whether an instrument qualified as a negotiable instrument. They involved the calculation of the amount due on a note for collection purposes.

rate of interest is reasonable.[7] *See generally Harris v. Rowe*, 593 S.W.2d at 306 (discussing when contract interpretation is a fact question). In this case, there is no summary judgment evidence regarding a reasonable rate of interest as a substitute for the interest rate stated in the note. Reasonableness is generally a fact question.[8] *See generally Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 456 (Tex.1972); *Boone v. American Fed. Bank, F.S.B.*, 864 S.W.2d 582, 584 (Tex. App.—Tyler 1993, no writ). Because there is no summary-judgment evidence establishing the applicable prematurity rate of interest as a matter of law, Remington failed in its summary-judgment burden to establish the amount due on the note. *See Clear Creek*, 589 S.W.2d at 678. We hold that the trial court erred in granting summary judgment in favor of Remington on its suit on the note. We now address BVR's counterclaims.

**B. Summary Judgment in favor of Remington on BVR's Counterclaims**

**(1) BVR's Usury Counterclaim**

BVR contends that the trial court erred in granting summary judgment in favor of Remington on BVR's counterclaims. Under BVR's second point of error, it contends that Remington did not "explain how or why it sought to use an alleged 18% interest rate and offered no [summary judgment] evidence or other legal authorities as to why that

alleged rate entitled it to judgment as a matter of law."

We construe BVR's contention as a complaint by BVR that Remington did not state any grounds entitling Remington to summary judgment on BVR's usury counterclaim. *See* Tex.R.App.P. 74(p). Our examination of Remington's motion reveals that Remington did not state any grounds in the motion with regard to BVR's usury counterclaim.[9] *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341–42 (Tex. 1993). We agree that the trial court erred in granting summary judgment on BVR's usury counterclaim.

**(2) BVR's Other Counterclaims**

BVR also apparently contends that the trial court erred in granting summary judgment in favor of Remington on BVR's other counterclaims. Remington did not state any specific grounds in the motion when it moved for summary judgment on BVR's other counterclaims. However, BVR does not complain of this on appeal. This Court will not reverse the trial court's judgment on the remaining counterclaims because BVR failed to assign error on appeal regarding the lack of grounds in the summary-judgment motion. *See Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 342 (Tex. App.—Houston [1st Dist.] 1989, writ denied), *cert. denied*, 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 742 (1990). Therefore, BVR waived any error regarding the summary judgment

7. In a similar case involving an interest rate on a note based on the prime rate of a failed banking institution, the court held there was a fact issue regarding what interest rate applied. *See NCNB Tex. Nat'l Bank v. Goldencrest Joint Venture*, 761 F.Supp. 32, 35 (N.D.Tex.1990). However, construction of a contract's terms regarding the applicable rate of interest is usually a question of law. *See generally Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979) (interpretation of a contract becomes a fact question when application of rules of construction leave uncertainty as to meaning). Therefore, we may decide contract-construction questions regarding interest to the extent it is a question of law. However, the parties did not introduce uncontroverted summary judgment evidence regarding reasonable rates of interest or comparable bank rates, so the court of appeals may not decide the issue of what specific rate of interest applies as a matter of law. *See generally Snyder v. Eanes Indep. Sch.*

*Dist.*, 860 S.W.2d 692, 697 (Tex.App.—Austin 1993, writ denied).

8. We note that the federal court in *Massingill* discussed the issue of what is a reasonable rate of interest. *See Massingill*, 24 F.3d at 780–81. However, because this is an appeal from a summary judgment, this Court need not discuss the fact issue of reasonableness.

9. This case involves "no grounds" specified regarding the counterclaims rather than "unclear grounds." *See McConnell*, 858 S.W.2d at 342–43. There were no "ambiguous" grounds. *See id.* Instead, Remington did not mention any specific counterclaim, nor did it refer to any element of the counterclaims. It did not allege an affirmative defense. The specificity in Remington's summary judgment motion concerned its own action on the note.

in favor of Remington on BVR's counterclaims for breach of contract, fraud in the inducement/fraud, negligent misrepresentation, and deceptive trade practices act violations. *See id.*

■ Under this point of error, BVR also contends the trial court erred in granting summary judgment on BVR's counterclaims because Remington failed to include citations to legal authority in its motion. Rule 166a does not require Remington to cite legal authority in its motion for summary judgment. *See* TEX.R.CIV.P. 166a. BVR cites no authority in support of the proposition that the trial court erred in granting summary judgment for that reason. We find no merit in this contention.

### C. *D'Oench* & the Federal Holder–in–Due–Course Doctrine

#### (1) Remington's Contention

In its brief, Remington apparently contends that it was still entitled to summary judgment on Remington's claim and on BVR's counterclaims under the federal holder-in-due-course doctrine.

#### (2) BVR's Contention

BVR contends Remington was not entitled to federal holder-in-due-course status because the note is not a negotiable instrument.

#### (3) Application of the Law to the Facts

Remington did not move for summary judgment on the ground that the *D'Oench* doctrine or the federal holder-in-due-course doctrine applied. Therefore, it cannot raise these issues for the first time on appeal.[10] *See Stiles*, 867 S.W.2d at 26.

■ Even if we construe Remington's motion as moving for summary judgment based on the federal holder-in-due-course doctrine, the doctrine does not apply. The summary-judgment evidence shows that the

promissory note in this case provided for a variable interest rate of "lender's prime rate" plus one percent. The "lender's prime rate" when Forestwood held the note was the Forestwood prime rate. When the FDIC first obtained the note, the note was a negotiable instrument because the FDIC could calculate a sum certain by referring to the Forestwood prime rate.

■ However, after Forestwood failed, there was no "lender's prime rate" from which to calculate the prematurity interest accruing during the time when the FDIC held the note. When the FDIC transferred the note to Remington, there was no way to calculate a "sum certain." Because the amount due could not be determined with commercial certainty, the note was not a negotiable instrument when Remington purchased it. *See Amberboy*, 831 S.W.2d at 796–97. Because the note was nonnegotiable, the federal holder-in-due-course doctrine did not apply to bar BVR's personal defenses.[11] *See Sunbelt*, 923 F.2d at 356; *cf. Beach*, 821 S.W.2d at 244. Remington was also not a holder in due course under Texas law. Remington took the note when it was past the maturity date, which precludes holder-in-due-course status. *See* TEX.BUS. & COM.CODE ANN. § 3.302(a)(3). We sustain BVR's first and second points of error. Because we sustain BVR's first two points of error, we need not address its third point of error.

We affirm the summary judgment in favor of Remington regarding BVR's counterclaims for breach of contract, fraud in the inducement/fraud, negligent misrepresentation, and deceptive trade practices act violations. We reverse that portion of the trial court's judgment regarding Remington's suit on the note and BVR's counterclaim for usury and remand this cause for proceedings consistent with this opinion.

---

**10.** Remington did not mention the doctrines in its motion. It merely alleged that it was an owner and holder and obtained the note from the FDIC by assignment.

**11.** As discussed *supra*, this opinion should not be construed as holding that no amount due may be

calculated for the note. We hold merely that the note is not a negotiable instrument because the amount due cannot be calculated with *commercial certainty* so that the note can be transferred as easily as money.